IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

MICHAEL CARUSO & CO., INC.,

    Plaintiff,

v.

ESTEFAN ENTERPRISES, INC. and
BONGOS CUBAN CAFE, INC.,

    Defendants.
_____/

CASE NO. 97-2993-CIV-KING
Magistrate Judge William C. Turnoff

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* FOR EXCLUSION OF DEFENDANTS' SURVEY EVIDENCE

### INTRODUCTION

On the eve of the evidentiary hearing on its motion for a preliminary injunction, Plaintiff submits to the Court a petition to prohibit Defendants during the hearing from relying upon the results of a consumer survey conducted in accordance with accepted principles of survey research and under the supervision of Defendants' expert, Professor Dan Sarel of the University of Miami. In support of this motion, Plaintiff advances the following arguments: (1) the survey is a violation of the parties' scheduling agreements, whereby Defendants agreed not to use the proposed briefing schedule to establish that Plaintiff "sat on its rights"; and (2) the survey evidence, albeit relevant, "confuses the issues before the Court" because it was directed at only potential customers of Defendants and was not specifically targeted to Plaintiff's customers. As explained below, both of these contentions submitted in support of Plaintiff's last-minute petition to exclude relevant evidence are wholly unfounded and, accordingly, Defendants respectfully request that this Court deny Plaintiff's motion to exclude Defendants' survey evidence.

CASE NO. 97-2993-CIV-KING

## DISCUSSION

A. *The Agreement Regarding The Proposed Briefing Schedule Did <u>Not</u> Restrict The Development Of Relevant Evidence Showing Unlikelihood Of Confusion.*

On October 16, 1997, the parties filed a JOINT MOTION TO SET DISCOVERY AND BRIEFING SCHEDULE IN CONNECTION WITH PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (DE 20). There, the parties proposed a briefing schedule and agreed as follows:

> The parties agree that Defendants shall not use Caruso's agreement to the foregoing proposed schedule against Caruso in connection with their defense of this litigation. In particular, Defendants agree not to argue that any of the preliminary injunction factors, such as irreparable harm or balancing of hardships, are affected by any **delay** in resolution of Plaintiff's Motion for Preliminary Injunction brought about by Caruso's agreement to the foregoing proposed schedule.

(Joint Mot. ¶ 6; emphasis added.) In other words, the parties agreed that the passage of time resulting from the extended briefing schedule would not be utilized against Plaintiff to defeat its case, including its request for extraordinary injunctive relief.

Now, *four* days after receipt of Defendants' consumer survey and *after* the oral examination of Defendants' expert, Professor Sarel, on the procedure and results of the survey, Plaintiff conveniently misinterprets the parties' agreement as prohibiting Defendants from gathering relevant evidence at any time after the filing of the joint motion. Such a position is both preposterous and completely contrary to the above-quoted language.[1] Defendants, in compliance with the parties' agreement, have *never* argued nor insinuated that "any of the

---

[1] Moreover, Plaintiff's position is inconsistent with its own development of evidence in support of its case through oral depositions after the filing of the joint motion.

2

CASE NO. 97-2993-CIV-KING

preliminary injunction factors . . . are affected by any **delay** in resolution of Plaintiff's Motion for Preliminary Injunction brought by Caruso's agreement." (Joint Mot. ¶ 6 (emphasis added).) In fact, nowhere in their papers do Defendants even make reference to the passage of time since the initiation of this action and the hearing on Plaintiff's application for a preliminary injunction. Defendants' opposition to the request for injunctive relief is based *solely* on relevant evidence and expert opinion on pertinent factual issues. In Defendants' view, Plaintiff's baseless accusation that Defendants have violated the parties' agreement is merely a desperate attempt to exclude relevant evidence which confirms and reinforces our substantiated position that there exists **no** likelihood of confusion between the parties' respective services and goods.

B. *Defense Counsel Timely Disclosed Defendants' Expert, Delivered The Survey Report, And Made Defendants' Expert Available For Oral Deposition.*

Plaintiff suggests in its motion that Defendants were untimely in identifying their expert. Contrary to Plaintiff's belief, however, Defendants disclosed their expert to Plaintiff's counsel shortly after he was hired as an expert to provide "testimony." According to the federal rules of evidence, a party is required to disclose the identity of an expert to his opponent only if the expert is employed to provide "testimony." FED. R. EVID. 26(a)(2). In the instant case, Defendants initially hired Professor Sarel as a marketing "consultant" only, making it clear to him that they had not reached a decision on whether he would be engaged as an expert witness to testify in Court. Thereafter, on or about December 16, 1997, Professor Sarel, after reviewing the materials forwarded to him by defense counsel, *recommended* during a telephone conversation that a consumer market survey be conducted. Defense counsel requested Professor Sarel to

3

submit a written proposal for the recommended survey for the client's consideration and approval. Defense counsel immediately communicated Professor Sarel's written proposal, as reflected in Professor Sarel's letter of Thursday, December 18, 1997, to their clients for approval. The clients' approval was not received until on or about Monday, December 22, 1997, as recorded in Professor Sarel's activity sheet attached as exhibit 5 to his deposition transcript. On Christmas eve, Professor Sarel forwarded to defense counsel his proposed survey questionnaire. Upon returning to the office on Tuesday, December 30, 1997, and *prior* to being apprised of the results of the survey, defense counsel advised Plaintiff's counsel in a supplementary discovery response dated December 30, 1997 that Professor Sarel had been engaged "to testify as an expert witness at the preliminary injunction hearing" on the likelihood of confusion issue and "related matters," that Professor Sarel was "currently supervising a market survey being conducted at the Bongos Cuban Cafe location," *and* that he was available for deposition on two different dates. Thus, Defendants timely disclosed their "expert testimony."

Defendants were also prompt in forwarding the survey report to Plaintiff. The survey at Bongos Cuban Cafe was conducted from December 27, 1997 through December 29, 1997. (*See* Sarel Tr. Exh. 5.) Professor Sarel analyzed the survey forms and prepared the report from December 30, 1997 through January 4, 1998. (*Id.*) On Monday, January 5, 1998, defense counsel received the survey report from Professor Sarel and *immediately*, without prior review or discussions of same with Professor Sarel, forwarded a copy to Plaintiff's counsel, as promised in the December 30, 1997 letter. Finally, Plaintiff's counsel deposed Professor Sarel on a date which they selected, Wednesday, January 7, 1998, and filed a transcript of the deposition with

the Court on Thursday, January 8, 1997. There has been no prejudice to Plaintiff. Quite apparently, the real reason Plaintiff has moved this Court to exclude the survey is that the survey evidence is devastating to its case.

### C. The Alleged Technical Unreliability Of Defendants' Survey Is Unsupported And Affects Only The Weight Accorded To The Survey.

In a final attempt to persuade this Court to exclude the relevant survey evidence, Defendants argue that the survey "presents an incomplete portrait on the issue of likelihood of confusion" and is thus "likely to confuse" because the survey was not "directed to actual and potential customers of both parties." (Pl.'s Mot. at 3.) Plaintiff urges that "[a]s Defendants' survey was directed to only Defendants' customers, any information associated therewith prejudices Plaintiff's position . . . " (Id. at 3-4.) This reasoning is flawed for several reasons.

First, assuming *arguendo* Plaintiff's unsupported theory is correct, it is routine to admit survey evidence because "the reliability of a survey generally goes to its evidentiary weight rather than to admissibility." THE AMERICAN INSTITUTE, RESTATEMENT OF THE LAW THIRD, *Unfair Competition*, § 24 (1997); *see E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1292 (9th Cir. 1992) (holding that any technical unreliability of the survey "goes to weight, not admissibility"); *Southland SOD Farms v. Stover Seed Co.*, 108 F.3d 1134, 1143 (9th Cir. 1997) (rejecting contention that survey evidence inadmissible because conducted in only certain geographic area, noting that such alleged defect goes "only to the weight, and not the admissibility, of the survey").

Second, Plaintiff did not conduct a survey of its own to support its contention that the "probative value" of the survey is "non-existent" because Professor Sarel employed an "incomplete" and "flawed universe" in designing the survey. (Pl.s' Mot. at 3-4.) Plaintiff, having had the opportunity since at least the commencement of this action to conduct its own survey, elected not to do so, even though it engaged an expert in this case. Because Plaintiff has not shown through survey evidence that a larger or different "universe" would have altered the survey results, this Court should disregard Plaintiff's argument that Defendants' survey is flawed. *See Eagle Snacks, Inc. v. Nabisco Brands, Inc.*, 625 F. Supp. 571, 577 (D.N.Y. 1985) (the plaintiffs' failure to conduct a survey is relevant in assessing the plaintiffs' argument that the result of the defendant's survey would have been different if the survey had followed plaintiffs' suggested procedure).

Third, Plaintiff's contention that the survey is defective because it did not target its customers is *contrary* to the position espoused in MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION ("McCarthy"). Specifically, McCarthy provides that, [i]n a traditional case claiming 'forward' confusion, not 'reverse' confusion, the proper universe to survey is the potential buyers of the *junior user's* goods or services." J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 32:159 (1997) (emphasis in original).

## CONCLUSION

For the reasons set forth above and based on the foregoing authorities, we respectfully request that the Court deny Plaintiff's motion to exclude Defendants' survey evidence and permit Defendants' expert, Professor Sarel, to present testimony at the evidentiary hearing on the

CASE NO. 97-2993-CIV-KING

methodology and results of the consumer survey.

Respectfully submitted,

**HOLLAND & KNIGHT LLP**
701 Brickell Avenue
Suite 3000
Miami, FL  33131
Tel: (305) 374-8500

_____
Wilfredo A. Rodriguez
Fla. Bar No. 334936
Vivian M. Rodriguez
Fla. Bar No. 0021482

**HOLLAND & KNIGHT LLP**
Leslie S. Spitalney
Florida Bar No. 969095

Counsel for Defendants Estefan Enterprises, Inc. and Bongos Cuban Cafe, Inc.

CASE NO. 97-2993-CIV-KING

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of January, 1998 a copy of the foregoing DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* FOR EXCLUSION OF DEFENDANTS' SURVEY EVIDENCE was hand-delivered to David K. Friedland, Esq., Counsel for the Plaintiff, at the Federal Justice Building, prior to the evidentiary hearing on Plaintiff's motion for a preliminary injunction.

_____
Vivian M. Rodriguez

MIA4-578590