

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

FILED by _____ D.C.

SEP 1 5 199

CARLOS JUENKE
CLERK U.S. DIST. CT.
S.D. OF FLA. · MIAMI

MICHAEL CARUSO & CO., INC.,

        Plaintiff,

v.

ESTEFAN ENTERPRISES, INC. and
BONGOS CUBAN CAFE, INC.,

        Defendants.

CASE NO. 97-2993-CIV-KING
Magistrate Judge William C.
Turnoff

NIGHT BOX

Rec'd

SEP 1 0 1998

CARLOS IUENKE
CLERK, USDC / SDFL / MIA

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

     Defendants Estefan Enterprises, Inc. ("Estefan Enterprises") and Bongos Cuban Cafe, Inc. ("Bongos Cuban Cafe") (collectively "Defendants"), by their undersigned counsel, submit this Memorandum of Law in Support of Defendants' Motion for Summary Judgment. For the reasons set forth below, summary judgment should be entered in favor of Defendants on all counts of Plaintiff's Complaint.

### INTRODUCTION

     As the Court noted in its February 12, 1998 Order Denying Plaintiff's Motion for Preliminary Injunction, to prevail on claims of trademark infringement and unfair competition, Plaintiff Michael Caruso & Co. Inc. ("Caruso") bears the burden in this case of proving that consumers will likely be confused about the relationship or affiliation between Plaintiff's clothing products and Defendants' restaurant/bar and souvenir merchandise. As found by the Court in its February 12, 1998 Order, Caruso cannot carry this burden. The undisputed facts show that the marks in question, the

products they represent, the customers of the parties, and the advertising used by the parties are so dissimilar that as a matter of law no likelihood of confusion exists.

## SUMMARY STATEMENT OF FACTS

Plaintiff commenced this action on September 17, 1997, alleging trademark infringement in violation of United States Trademark Act of 1946 (also known as the Lanham Act), 15 U.S.C. § 1114 (Count I); unfair competition in violation of section 1125(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count II); trademark dilution in violation of section 1125(c) of the Lanham Act, 15 U.S.C. § 1125(c) (Count III); trademark dilution in violation of Florida Statute § 495.151 (Count IV); and common law unfair competition.  Plaintiff filed a motion for preliminary injunction on October 1, 1997, and after full briefing by the parties, an evidentiary hearing was conducted on January 9 and 12, 1998.

By order dated February 12, 1998, this Court denied Plaintiff's motion.  The Court specifically found that "after careful examination of the seven factors in the likelihood of confusion test, . . . Plaintiff has not made an adequate showing that there is a likelihood that consumers will confuse its products with Defendants' products." (D.E. 66,[1] Order Denying Motion for Preliminary Injunction at 18.)  The Court also found that "Plaintiff's mark is not so inherently distinctive and famous as to rise to the level of 'Buick' or 'Dupont' as to support a claim of dilution under either federal or Florida law."  (Id. at 20 and 23.)

Defendants recognize that, because the standards for deciding motions for summary judgment and motions for preliminary injunctions are different, the Court is not bound by the findings made in its February 12, 1998 Order.  See Fed. R. Civ. P. 54(b); City of Chanute, Kan. v. Williams Natural Gas Co., 955 F.2d 641, 649 (10th Cir.

---

[1]"D.E." stands for Docket Entry.  Accordingly, D.E. 66 refers to Docket Entry 66, the Order Denying Motion for Preliminary Injunction.

1992). Defendants note, however, that none of the facts relevant to a decision on the merits of this case have changed since the Court issued its February Order. The undisputed material facts are discussed, as required by S.D. Fla. L.R. 7.5, in the separately filed Statement of Undisputed Material Facts.

## ARGUMENT

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Defendants, as moving parties, bear the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that need to be decided at trial. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Clark v. Coats & Clark, Inc., 929 F.2d 604 (11th Cir. 1991). Where, as in the instant case, the moving party does not bear the burden of proof at trial, the moving party discharges its burden "by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case." Celotex, 477 U.S. at 325. When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e).

Courts routinely grant summary judgment in favor of the defendant in trademark infringement or unfair competition cases where the undisputed facts indicate that no reasonable person would find a likelihood of confusion. See, e.g., Universal City Studios, Inc. v. Nintendo Co., Ltd., 746 F.2d 112 (2nd Cir. 1984); Pignons S.A. de

3

Mechanique v. Polaroid Corp., 657 F.2d 482 (1st Cir. 1981); Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc., 915 F. Supp. 360 (S.D. Fla. 1996); Ocean Bio-Chem, Inc. v. Turner Network Television, Inc., 741 F. Supp. 1546 (S.D. Fla. 1990); Investacorp, Inc. v. Arabian Inv. Banking Corp., 722 F. Supp. 719 (S.D. Fla. 1989).

Here, summary judgment is appropriate as to all counts of Caruso's Complaint, including Count I (Federal Trademark Infringement), Count II (Federal Unfair Competition), Count III (Federal Dilution), Count IV (Violation of Florida's Anti-Dilution Statute) and Count V (Common Law Unfair Competition).

### A.   Defendants' Use of the Mark BONGOS CUBAN CAFE for a Restaurant and Associated Merchandise is not Likely to Cause Confusion with Caruso's Clothing Line.

The principal claims asserted in Caruso's complaint allege trademark infringement and unfair competition under Florida and federal law. In order to prevail on these claims, Caruso bears the heavy burden of establishing that visitors to Defendants' Cuban-themed restaurant and bar are likely to be confused as to the relationship or affiliation between that establishment and Caruso's American made clothing line. See Breakers of Palm Beach, Inc. v. International Beach Hotel Dev., Inc., 824 F. Supp. 1576, 1586 (S.D. Fla. 1993) (applying likelihood of confusion analysis to Florida trademark claim). "Likelihood of confusion" has been held to be synonymous with "probable" confusion--it is not sufficient for Caruso to show that confusion is merely "possible." Rodeo Collection, Ltd v. West Seventy, 812 F. 2d 1215, 1217 (9th Cir. 1987); Shatel Corp. v. Mao Ta Lumber & Yacht Corp., 697 F.2d 1352, n.2 (11th Cir. 1983).

Common sense dictates that confusion is unlikely: a visitor to Defendants' 500 seat BONGOS CUBAN CAFE, a Cuban-themed restaurant/bar ablaze with images of bongo drums, maracas and Cuban dancers and musicians, is not likely to form the

4

impression that the restaurant/bar is somehow affiliated with or sponsored by the maker of "All American" BONGO brand clothing. More importantly, this common sense conclusion is amply supported by an analysis of the seven factors for determining likelihood of confusion.

### 1. Strength of Caruso's BONGO Mark

As the Court noted in its February 12, 1998 Order denying Caruso's motion for preliminary injunction, Plaintiff's mark does not have a "strong trademark significance" for two reasons.  (D.E. 66, Order Denying Motion for Preliminary Injunction at 10.)[2] First, although Plaintiff's mark is arbitrarily applied to the goods in question, it is still a common English word.  The word "bongo" most commonly means "one of a pair of connected tuned drums that are played by beating with the hands."  The American Heritage College Dictionary, 3d Edition at 158.  The fact that this common term is arbitrarily applied to the goods in question does not render the mark strong.  As stated by the court in Major League Baseball Properties, Inc. v. Sed Non Olet Denarius, Ltd., 817 F. Supp. 1103 (S.D.N.Y. 1993),

> Unlike the case with "coined" or arbitrary words, the courts have consistently held that common English words, **even if used arbitrarily in application to a user's services**, are of weak trademark significance outside their field of operations.

Id. at 1119 (emphasis added) (citing Sun Banks of Florida v. Sun Federal Savings and Loan, 651 F.2d 311, 316 (5th Cir. 1981)).[3]  The reason for this rule is that courts are

---

[2]The Court also rejected any argument that Plaintiff's mark was automatically strong because the mark enjoys "incontestable" status.  The Court specifically stated that "incontestable status" is just one of the many factors to be considered in the likelihood of confusion analysis.  (D.E. 66, Order Denying Motion for Preliminary Injunction at 8.)

[3]In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued before October 1, 1981.

reluctant to grant a user of a mark, which consists of a word of common English usage, a monopoly on that term outside of the mark holder's field. Major League Baseball, 817 F. Supp. at 1119. Accord Alpha Indus., Inc. v. Alpha Tube & Shapes, Inc., 616 F.2d 440, 445-46 (9th Cir. 1980). Thus, while Caruso's BONGO mark may be considered inherently strong as applied to a junior women's retail clothing line, the strength of the mark does not extend beyond that field of products. See, e.g., Mead Data Central, Inc. v. Toyota Motor Sales, U.S.A., Inc., 875 F.2d 1026, 1027 (2d Cir. 1989) (in rejecting claim that LEXUS mark for automobiles infringed the mark LEXIS for computer assisted legal research services, the court declined to find LEXIS a strong mark outside the field of computer assisted legal research services due to common usage of term "lexis" in the English language).

Second, the BONGO mark is significantly weakened by the extent of third-party use of the term BONGO or BONGOS as trademarks for a variety of other types of goods and services. See, e.g., Sun Banks of Florida, Inc., 651 F.2d 311 at 315-16 (term "sun" of weak trademark significance in light of other third-party uses of term as trademark for various goods and services); Amstar Corp. v. Domino's Pizza, Inc., 615 F.2d 252 at 260 (5th Dir. 1980) (although plaintiff's DOMINO mark was arbitrary as applied to sugar, mark was nevertheless weak in light of other third-party uses of term as trademark for other goods and services).

A search conducted by an outside search firm revealed that at least 75 businesses throughout the United States have used the mark BONGO or BONGOS for a variety of goods and services. (D.E. 40, Ex. 11,[4] Smith Aff. ¶¶ 2-8, 11-13 and Exs. B, C, D and

---

[4]As the Court may recall, in opposition to Plaintiff's motion for a preliminary injunction, Defendants filed on December 10, 1997 a two-volume appendix containing 33 Exhibits.  Volume I (Exhibits 1-11) is found at Docket Entry 40.  Volume II (Exhibits 12-33) is found at Docket Entry 41.  To avoid unnecessary voluminous filings, Defendants, instead of refiling the appendix, incorporate by reference the Exhibits contained in the appendix and, for the Court's ease of reference, provide the Docket
(continued...)

G thereto; D.E. 41, Exs. 12-15)  Of those listed in the search report, at least 33 businesses or individuals have been confirmed to be currently using the BONGO or BONGOS name.  (D.E. 40, Ex. 11, Smith Aff. ¶ 7 and Ex. C thereto; D.E. 41, Ex. 12.) In addition, approximately 12 businesses and individuals appear to be doing business on the Internet under the name BONGO or BONGOS.  (D.E. 41, Ex. 12.)  Furthermore, there are presently 6 federal registrations and 11 state registrations for marks that incorporate those terms that are owned by persons other than Caruso.  In addition, there are 2 pending applications to register the mark BONGO that have been approved for registration by the Patent and Trademark Office.  (D.E. 41, Exs. 13 and 14.)  Still further, there are 7 prior federal registrations that existed subsequent to the date that Caruso began using its BONGO mark, although those previous registrations have since expired or been cancelled.  (D.E. 41, Ex. 15.)  Of the foregoing third-party marks, 22 were or are used in connection with restaurant or nightclub services, and 12 were or are used in connection with sale of clothing products.  Of particular importance is the fact that at least three other businesses in the United States that are currently operating restaurants under the name BONGO are also selling merchandise for their restaurants, including t-shirts.  (D.E. 40, Ex. 11, Smith Aff. ¶¶ 11-13 and Ex. G thereto.)  These restaurants include BONGO BURGER in California, BONGO JAVA in Tennessee and BONGO'S BEACH BAR & GRILL in Florida.

Significantly, both Caruso's President and its Vice President of Design and Merchandising conceded that they are not aware of any confusion that has occurred as

_____

[4](...continued)
Entry of the volume when citing to the appendix throughout this memorandum.

The instant cite refers to Exhibit 11, the Smith Affidavit, and Exhibits B, C, D, and G to the Smith Affidavit.  Exhibit 11 is found at Tab 11 to the first volume of the appendix.  The remaining citations follow this approach.

.

a result of these businesses selling t-shirts bearing their respective trademarks. (D.E. 41, Ex. 16, Depo. Test. of Kail, at 63-65; D.E. 41, Ex. 17, Depo. Test. of Muñoz, at 49-50.) See also D.E. 62, Tr. of Hr'g, at 86-88.) In fact, Caruso's President testified that he is not aware of any substantial harm that his company's business has suffered as a result of any third-party's use of the mark BONGO for clothing items. (D.E. 41, Ex. 18, Depo. Test. of Kail, at 64.) In light of the plethora of third-party trademark use of the term "bongo" or "bongos," and in light of the fact that the term "bongo" is a common English word, the Plaintiff's mark is weak. Thus, this factor weighs in favor of Defendants.

## 2.    Similarity of the Marks

This factor in the analysis requires a comparison of the appearance, sound, and meaning of the marks, as well as the manner in which the marks are used. It is axiomatic that when analyzing the similarity of two trademarks, the marks must be viewed in their entireties, rather than comparing individual component parts of the marks. See Little Ceasar Enterprises, Inc. v. Pizza Caesar, Inc., 834 F. 2d 568, 571 (6th Cir. 1987). Any assertion that the Court should focus its inquiry solely upon the "dominant" feature of Defendants' trademark in assessing similarity is wrong. In re Nat'l. Data Corp., 753 F.2d 1056, 1058 (Fed. Cir. 1985) (stating that even though "dominant" features may be considered, "the ultimate conclusion rests on the consideration of the marks in their entireties"). Such a "piecemeal" analysis would constitute a direct violation of the anti-dissection rule. Little Ceasar, 834 F.2d at 571 (error to conclude that PIZZA CAESAR USA trademark is similar to LITTLE CEASAR trademark simply because both share the term "Caesar;" no likelihood of confusion found); J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 23.41, at 23-89 (4th Ed. 1997) ("It has been held to be a violation of the anti-dissection rule to focus upon the "prominent" feature of a mark and decide likely confusion solely upon that featur[e]").

8

The marks BONGO and BONGOS CUBAN CAFE do not look or sound similar, nor do they convey the same meaning. In addition to the fact that Defendants' mark incorporates the plural form of the word "bongo," the addition of the words CUBAN CAFE significantly distinguishes Defendants' mark in terms of appearance, sound and meaning. The phrase CUBAN CAFE immediately informs the consumer that Defendants are proprietors of a restaurant and not clothing designers or manufacturers.

The mere fact that the parties' marks both incorporate some form of the same common English word "bongo" is not a sufficient basis for concluding that the parties' marks are "similar." See, e.g., Bell Lab., Inc. v. Colonial Prod., Inc., 644 F. Supp. 542 (S.D. Fla. 1986) (FINAL FLIP not confusingly similar to FLIP for same product; preliminary injunction denied); Colgate-Palmolive Co. v. Carter-Wallace, Inc., 432 F.2d 1400 (CCPA 1970) (PEAK PERIOD not confusingly similar to PEAK); Conde Nast Publications, Inc. v. Miss. Quality, Inc., 507 F.2d 1404 (CCPA 1975) (COUNTRY VOGUES not confusingly similar to VOGUE); Mr. Hero Sandwich Systems, Inc. v. Roman Meal Co., 781 F.2d 884 (Fed. Cir. 1986) (ROMANBURGER not confusingly similar to ROMAN; both for food products); In re Hearst Corp., 982 F.2d 493 (Fed. Cir. 1992) (VARGA GIRL not confusingly similar to VARGAS).

This is particularly true given that the word "bongo" or "bongos" is used by a plethora of other businesses, including clothing and restaurant businesses, as discussed above. In cases such as this one, where the common element of two marks is a term that is widely used by others, even minor variations are considered sufficient to negate any confusing similarity. See Sun Banks, 651 F.2d at 316 (SUN FEDERAL SAVINGS AND LOAN ASSOCIATION not confusingly similar to SUN BANKS where common term "SUN" was in use by many others); Little Ceasar, 834 F.2d at 571 (PIZZA CEASAR USA not confusingly similar to LITTLE CEASAR'S where common term "Ceasar" was in use by many others); Amstar, 615 F.2d at 260 (DOMINO'S PIZZA not

9

confusingly similar to DOMINO where common term "domino" was in use by many others); McCarthy, supra, § 23.15[6] at 23-98.

In addition to the clear differences in the appearance, sound and meaning of the marks, the marks BONGO and BONGOS CUBAN CAFE also convey entirely dissimilar commercial impressions. In this respect, this case is analogous to Amstar Corp. v. Domino's Pizza, supra, in which this Circuit held that there was no likelihood of confusion between the mark DOMINO'S PIZZA for pizza delivery services and the mark DOMINO for sugar because the word "DOMINO," in its possessive form, next to the word "PIZZA" created an Italian connotation that was substantially different from the commercial impression created by the word "DOMINO" standing alone. Here, the word "BONGO", in its plural form, next to the words "CUBAN CAFE" conveys a Cuban connotation which differs substantially from the singular form of the word "BONGO" standing alone.

The different commercial impressions created by the marks BONGO and BONGOS CUBAN CAFE, while clear on their face, are even further dramatized by the manner in which the marks are used in the marketplace. See McCarthy, supra, § 23.26 at 23-61 ("In determining the meaning and connotation which the trademark projects, it is proper to look to the context of use, such as material on labels, packaging, advertising and the like").

The Cuban connotation conveyed by Defendants' BONGOS CUBAN CAFE mark is projected and accentuated through the manner in which the mark is used. The mark is generally displayed in connection with one of three logo designs consisting of (1) a man dressed in Cuban-style clothing playing the bongo drums; (2) a woman dressed in Cuban-style clothing dancing and playing the maracas; and (3) the words BONGOS CUBAN CAFE, in which the silhouettes of two hands are juxtaposed atop the O's in the word BONGOS, to convey the impression of hands playing bongo drums. (D.E. 40, Ex. 2, Amadeo Aff. ¶ 8 and Exs. D and E thereto.)

10

These logos are consistent with the Cuban theme of the restaurant/bar, which is embodied in all aspects of the restaurant/bar, including its menu, decor, music and advertising.  The menu, for example, is written in both English and Spanish, and it incorporates images of bongo drums, maracas, Cuban coffee cups, mangos and jalapeño peppers.  (D.E. 40, Ex. 2, Amadeo Aff. ¶ 12 and Ex. H thereto.)  The menu consists entirely of Cuban fare, featuring dishes such as "Arroz con Pollo" (yellow rice with chicken), "Lomo de Puerco" (Cuban style pork loin) and "Flan de Queso" (cheese flan).  The decor of the restaurant/bar, the music played and performed live at the restaurant/bar and the advertising for the restaurant/bar further support the Cuban theme.  (D.E. 40, Ex. 2, Amadeo Aff. ¶¶ 13-14 and Exs. I, J and M thereto.)  Even the souvenir merchandise sold at the restaurant/bar carries the Cuban theme.  In addition to the standard t-shirt and sweatshirt items, the restaurant's gift shop sells Cuban-style cigars, straw hats, ponchos, guayabera shirts, mojito (Cuban marinating sauce) and merenguitos (Cuban cookies).  (D.E. 40, Ex. 2, Amadeo Aff. ¶ 15 and Ex. K thereto.)

In stark contrast to Defendants' Cuban-themed restaurant and souvenir merchandise, Plaintiff consistently markets its goods as being "All American."  A review of Plaintiff's advertisements and clothing labels makes clear that Caruso represents itself as an "All-American Company" which sells traditional American clothing.  Plaintiff consistently uses slogans such as "Always American Made," "Fine American Jeans," "Authentic American," and "An American Classic" in promoting its goods.  (See D.E. 10, Kail Aff. Exs. B, C, and E attached thereto; D.E. 41, Ex. 19.  See also D.E. 62, Tr. of Hr'g, at 58, lines 11-12.)

Plaintiff's "All American" image is further supported by the visual images which Plaintiff displays in its advertisements and on its clothing tags.  Plaintiff's advertisements generally depict young American women and girls dressed in denim clothing.  (See D.E. 10 Kail Aff., Exs. G and C attached thereto.)  Further, its clothing

11

tags are replete with images of American flags and with other images that covey an American 60's era "peace, love and happiness" message, such as flowers, peace signs, butterflies, hearts and the like. (Id. Kail Aff., Ex. B attached thereto.)

The juxtaposition of Defendants' Cuban-themed restaurant and Plaintiff's "All American" jeans vividly demonstrates that there is no possibility, much less probability, that consumers will be confused regarding the association between these parties. The only commonality between Plaintiff's and Defendants' marks is that they both share the common English term "bongo(s)," a term used by many other businesses for many other goods and services. Beyond that single common element, which in itself is woefully insufficient to establish an infringement claim, Plaintiff's and Defendants' marks are as different as night and day. Accordingly, this factor in the likelihood of confusion analysis weighs heavily in favor of Defendants.

### 3.   Similarity of the Goods and Services

Any argument that Plaintiff and Defendants sell similar goods or offer similar services must be rejected. Plaintiff is a designer and manufacturer of a retail clothing line sold through department stores. Over 90% of its products are marketed and sold to young women. (See D.E. 40, Ex. 6 (showing that over 90% of Plaintiff's products are for sales of "Juniors" clothing products).)[5] Defendants, on the other hand, own and operate a 500 seat Cuban-themed restaurant/bar located in the Walt Disney World Resort®. Defendants generate approximately 93% of their revenue from the sale of food and beverages. (D.E. 40, Ex. 2, Amadeo Aff. ¶ 17.) In short, Plaintiff's clothing products and Defendants' restaurant services do not compete with one another. They are neither similar nor related.

---

[5]Exhibit 6 attached to the appendix was previously filed under seal and was assigned Docket Entry 33.

The fact that Defendants do not provide any goods or services that compete with or are related to Caruso's goods weighs heavily in Defendants' favor in the likelihood of confusion analysis. Western Publishing Co., Inc. v. Rose Art Ind., Inc., 910 F.2d 57, 62 (2nd Cir. 1990) (fact that plaintiff does not market a product that is competitive with defendant's product "weighs heavily in favor of [defendant]"). See also Resource Dev. v. Statue of Liberty-Ellis Island, 926 F.2d 134, 141 (2d Cir. 1991) (where products are so dissimilar that no reasonable person could be confused, no question of fact is presented on the issue of likelihood of confusion); Moore Business Forms, Inc. v. Rite Aid Corp., 21 U.S.P.Q. 2024, 2028 (W.D.N.Y. 1991) ("products that Moore markets under its COMPURITE mark and the products that Rite Aid markets under its CompuRITE mark are so dissimilar that this alone is supportive of Rite Aid's motion for summary judgment").

Indeed, given the importance of this factor in the likelihood of confusion analysis, courts consistently reject claims of infringement for identical marks where the goods or services are not similar. See, e.g., Beneficial Corp. v. Beneficial Capital Corp., 529 F. Supp. 445 (S.D.N.Y. 1982) (BENEFICIAL for consumer loans not confusingly similar to BENEFICIAL for business loans); Scott v. Mego Int'l, Inc., 519 F. Supp. 1118 (D. Minn. 1981) (MICRONAUTS for toys not confusingly similar to MICRO NAUTS for hobby items); Schoenfeld Indus., Inc. v. Britannia Sales, Ltd., 512 F. Supp. 979 (S.D.N.Y. 1981) (BRITANNIA for blankets, sheets and pillowcases not confusingly similar to BRITANNIA for wearing apparel); Dunfey Hotels Corp. v. Meriden Hotels Inv. Group, Inc., 504 F. Supp. 371 (S.D.N.Y. 1980) (PARKER HOUSE for apartment services not confusingly similar to PARKER HOUSE for hotel services); Freedom Savings & Loan Ass'n v. Way, 757 F.2d 1176 (11th Cir. 1985) (FREEDOM for savings and loan services not confusingly similar to FREEDOM for real estate brokerage services). Accordingly, this factor weighs against a finding of likelihood of confusion.

Nonetheless, Plaintiff argues that because Defendants derive a de minimus amount of revenue from the sale of souvenir clothing, both parties sell products that fall within the general category of clothing and, therefore, the parties sell similar products for purposes of determining likelihood of confusion.  For products to be considered similar, however, the products must be of the "kind that the public attributes to a single source." Remy Martin & Co. v. Shaw-Ross Int'l Imports, Inc., 756 F.2d 1525, 1530 (11th Cir. 1985).  Consumers do not automatically conclude that products come from the same source simply because the products fall within the same general category.  Instead, common sense considerations such as the overall similarities of the products and the competitive proximity of the products dictate the extent to which consumers are likely to assume that two products emanate from the same source.

For example, in Amstar Corp., the court expressly stated that although pizza and sugar are food products, this fact alone does not make the products similar.  "About the only things they have in common are that they are edible." Amstar Corp., 615 F.2d at 261 (citation and quotations omitted).  See W.W.W. Pharmaceutical Co. Inc. v. Gillette Co., 984 F. 2d 567, 572 (2nd Cir. 1993) (fact that both products may be generally defined as personal care products "does not make them proximate"); Lang, 949 F.2d 576, 582 (2nd Cir. 1991 (fact that defendant's magazine and plaintiff's books and tapes are both related to the field of publishing "does not render them proximate"); McGraw-Hill, Inc. v. Comstock Partners, Inc., 743 F. Supp. 1029, 1034 (S.D.N.Y. 1990) (although both parties furnish products related to the field of finance, products are "as completely unrelated as night and day"); McGraw-Edison Co. v. Walt Disney Productions, 225 U.S.P.Q. 512, 515 (N.D. Ill. 1985) (fact that both parties' products involve electronics does not establish similarity of products).

Similarly, in Ross Bicycles, Inc. v. Cycle USA, Inc., 765 F.2d 1502 (11th Cir. 1985), the Eleventh Circuit held that even products that are generic equivalents are not necessarily similar for purposes of determining confusion.  The products must  be

dissected and examined to determine their exact similarities. In <u>Ross</u>, a bicycle manufacturer using the mark ROSS DIAMOND CRUISER sought to enjoin another bicycle manufacturer from selling a bicycle under the mark BOSS CRUISER. The district court entered judgment for the defendant, finding no likelihood of confusion. On appeal, the Eleventh Circuit affirmed, holding that the record supported the finding of no likelihood of confusion. The court observed that even though both products were bicycles, a focused examination of the products revealed that they were not similar enough to cause confusion:

> The products in this case, although similar (both being bicycles), are not so similar as to be likely to cause confusion. As stated earlier, the size of the tubing, the style of the wheels, pedals, seats, kickstands, and the difference in the frame angles on the Boss Cruiser and the Ross Diamond Cruiser are significant. The bicycles not only look different, the evidence showed that they had different riding characteristics.

<u>Id.</u> at 1507.

The Second Circuit Court of Appeals reached a similar conclusion with regard to clothing items in <u>McGregor-Doniger, Inc. v. Drizzle, Inc.</u>, 599 F.2d 1126 (2d Cir. 1979). In <u>McGregor</u>, a manufacturer of golf jackets under the mark DRIZZLER sought to enjoin a manufacturer of women's coats from using the mark DRIZZLE. After a two-day bench trial, the district court dismissed the action. On appeal, the court addressed the issue of whether golf jackets and women's coats are sufficiently similar to support a finding of likelihood of confusion:

> It is evident that customers would be more likely to assume that DRIZZLER golf jackets and DRIZZLE golf jackets come from the same source than they would be likely to assume that DRIZZLER golf jackets and DRIZZLE steam shovels come from the same source. DRIZZLE coats for women fall between the two extremes. In locating the appropriate place for DRIZZLE coats on this continuum, the district court considered many of the factors that are generally viewed as relevant.

15

Id. at 1135.  The court then observed that because the two products are different in appearance, different in uses, sold in different establishments, and promoted to different persons, the district court correctly concluded that the products are not similar.  The court stated that while men's and women's apparel may be sufficiently related to justify the denial of the registration of a similar mark, there is no "per se" rule mandating a conclusion of likelihood of confusion in an infringement setting: "We know of no case holding that, as a matter of law, the competitive distance between men's apparel and women's apparel cannot be demonstrated to be significant on the basis of the many factors relevant to such a determination."  Id.

As these cases show, there is no firm rule that products that can generally be characterized as "clothing" must be considered similar or within the same field of operation and ipso facto create a likelihood of confusion.  Furthermore, application of these cases to the present case supports a finding that the products are dissimilar. First, the only similarity between the products here is that both fall within the same broad category of "clothing."  This fact alone is insufficient to support a finding of likelihood of confusion.  The same consumer who can readily discern that a manufacturer of sugar does not sell pizza or that a manufacturer of women's coats does not also sell golf jackets can also readily discern that a designer and manufacturer of brand name junior women's retail clothing does not sell souvenir t-shirts and hats that promote a restaurant/bar.

Second, just as in Ross Bicycles, a focused examination of the products reveals that they are not similar.  Here, consumers purchasing t-shirts and other souvenir clothing items at Defendants' gift shop will know that those items are being sold as part of, and ancillary to, the restaurant/bar.  Indeed, the gift shop is located on the

16

premises of the restaurant, a sign atop the center outside entrance to the gift shop states "GIFTS," and the logos affixed to the merchandise in the gift shop are the same as, or very similar to, those prominently appearing both inside and outside of the restaurant/bar.

Finally, just as in <u>McGregor-Doniger</u>, a review of additional factors further indicates that the products are dissimilar.  Defendants' sale of souvenir merchandise is a minor part of its BONGOS CUBAN CAFE business.  As of July 31, 1998, Defendants have experienced total sales of $11,0013,638.13.  (Ex. 1 attached hereto, Amadeo Aff. ¶ 2)  Of that amount, only $719,167.83, or 6.53%, is attributable to sales of souvenir merchandise.  (<u>Id.</u>)  Further, of the $719,167.83 attributable to sales of souvenir merchandise, only $251,708.74 is attributable to sale of souvenir clothing items, such as t-shirts and sweatshirts.  (<u>Id.</u>)  Therefore, as of July 31, 1998, Defendants' sale of souvenir clothing items represents only 2.28% of its total revenue. (<u>Id.</u>)

More importantly, Defendants do not engage in any advertising whatsoever for the souvenir merchandise sold in the gift shop.  All advertising is designed solely to promote the restaurant/bar.  (D.E. 40, Ex. 2, Amadeo Aff. ¶ 18.)

Thus, as Defendants' sale of souvenir merchandise is merely ancillary to their restaurant and bar services, and is clearly perceived as such by the consumer, Plaintiff must show that consumers are likely to believe that Defendants' Cuban themed restaurant/bar and Plaintiff's American made retail clothing line emanate from the same source in order to establish that those goods and services are related.  Plaintiff cannot make that showing here.  There is no evidence to suggest that clothing

designers and manufacturers are typically engaged in the provision of restaurant services or that consumers are likely to assume that such a connection exists.

To the contrary, there are countless instances in which the same trademark is used by different persons or entities for a restaurant and for a clothing line.  In fact, just a partial review of the Trademark Office records revealed that, in at least 19 instances, the same word or term is federally registered by different owners for restaurant services and for clothing.  (D.E. 40, Ex. 11, Smith Aff. ¶¶ 2-3 and Ex. A thereto.)  This evidence suggests that consumers are accustomed to seeing a mark used by one company for clothing that is the same as the mark another company is using for a restaurant, and that consumers are not likely to assume that those companies are related simply by virtue of the fact that the same trademark is used by both.

Plaintiff has argued that even if there is no "point of purchase" confusion on the part of persons at the gift shop, there could arise "post-sale" confusion on the part of persons seeing a BONGOS CUBAN CAFE souvenir t-shirt worn on the street.  This argument, again, is contrary to common sense.  If a consumer does not mentally associate BONGOS CUBAN CAFE, the restaurant, and BONGO, the junior sportswear clothing company, he or she will not suddenly associate them simply because he or she sees a souvenir t-shirt that says BONGOS CUBAN CAFE.  The words CUBAN CAFE on the t-shirt tell the consumer that the t-shirt is promoting a restaurant.

As established by the record evidence, and as this Court undoubtedly knows from its own experience, consumers are accustomed to seeing t-shirts and hats promoting every variety of product and service under the sun.  Manufacturers of automobiles, motorcycles, chewing tobacco, bubble bath and candy all sell t-shirts, hats and sweatshirts emblazoned with their brand names.  The same is certainly true of services

18

and not just products.  Amusement parks, resorts, museums, and especially restaurants and bars, frequently sell promotional t-shirts bearing their trademarks.

Consumers do not assume that because they see a brand name on a t-shirt or hat, the brand signifies a clothing designer.  This is particularly true where, as here, the brand name tells the consumer on its face the nature of the product or service being promoted.  As the Court observed in its Order, "if we were to see a person on the street or at a mall wearing a T-shirt saying . . . Lee's Hungarian Cafe, we would understand that the T-shirt is promoting a restaurant.  We would not be at all likely to assume that the T-shirt was made by the company that makes Lee Jeans." (D.E. 66, <u>Order Denying Motion for Preliminary Injunction</u> at 14.)  For all of these reasons, Plaintiff's argument that Defendants' souvenir merchandise is likely to cause confusion, whether characterized as "point of purchase confusion," "post-sale confusion," or any other type of confusion, is meritless.

### 4.    <u>Similarity of the Retail Outlets and Customers</u>

The retail outlets and customers, or "channels of trade," through which the parties' respective goods and services are sold, are also entirely unrelated.  Caruso's clothing line is sold through department stores in shopping malls, such as J.C. Penney, Sears, and Macy's.  The vast majority of Caruso's products are marketed and sold to young women.  Customers encounter Caruso's products when shopping in their hometown department stores and, in such an environment, Caruso's trademark clearly appears to such persons as a brand name for a retail clothing line.  (<u>See</u> D.E. 41, Composite Ex. 20; D.E. 40, Ex. 11, Smith Aff. ¶¶ 9-10 and Exs. E and F attached thereto.)

In contrast, Defendants provide restaurant and bar services through a restaurant and bar facility located on Walt Disney World Resort® property in Orlando, Florida.

The majority of Defendants' customers are vacationers visiting the Walt Disney World Resort® and surrounding area attractions. (D.E. 40, Ex. 2, Amadeo Aff., ¶ 6.) The establishments surrounding Defendants' facility are other restaurants, a multiplex movie theater, gift and specialty shops and other entertainment establishments. (Id. at ¶ 4.) Customers visiting Defendants' Cuban themed restaurant/bar and purchasing souvenir items from the gift shop in the restaurant/bar will clearly perceive the name BONGOS CUBAN CAFE as the name of the restaurant/bar.

The facts that Caruso's and Defendants' respective goods and services are different and are sold through wholly unrelated channels of trade weigh heavily in favor of Defendants in the likelihood of confusion analysis.

### 5.   Similarity of Advertising Media

As the Court noted in the February 12, 1998 Order, there is "absolutely no evidence that the parties' advertising media are 'substantially similar.'" (D.E. 66, Order Denying Motion for Preliminary Injunction at 16.) Caruso advertises its clothing line primarily through slick color ads in teens and women's fashion magazines, such as Seventeen, Glamour, Teen, Elle, Young Miss, Cosmopolitan, Vanity Fair, and Mademoiselle. (D.E. 10, Kail Aff. ¶ 11 and Ex. G thereto.) Caruso's other principal means of advertising is through a television ad run approximately eight to ten weeks of the year on MTV. (D.E. 41, Ex. 21, Depo. Test. of Kail, at 38-40.) Though its Latin American distributors advertise in Spanish, Caruso makes no efforts to specifically target the Hispanic community. (D.E. 41, Ex. 22, Depo. Test. of Muñoz, at 33; D.E. 41, Ex. 24, Depo. Test. of Kail, at 51.)

Defendants, on the other hand, advertise their restaurant/bar primarily through radio advertisements and through print advertisements in newspapers such as The Orlando Sentinel, The Tampa Tribune, and The Miami Herald, travel magazines such as Travel Host, and geographically oriented magazines such as South Florida Magazine and Ocean Drive. (D.E. 40, Ex. 2, Amadeo Aff. ¶ 19 and Ex. M thereto.) Defendants

also direct a substantial portion of advertising to the Hispanic community, broadcasting Spanish language radio advertisements throughout Miami, Tampa and Orlando, and publishing Spanish language print advertisements in publications such as Selecta, a general interest magazine targeted to the Hispanic community.  (D.E. 40, Ex. 2, Amadeo Aff. ¶ 19.)

The fact that the parties employ entirely distinct advertising mediums weighs in favor of Defendants in the likelihood of confusion analysis.

### 6.   Evidence of Actual Confusion

Defendants' restaurant at Walt Disney World Resort® has been open since September 1997 under the name BONGOS CUBAN CAFE.  In that period of time, Defendants have experienced sales of well over $11 million.  (Ex. 1 attached hereto, Amadeo Aff., ¶ 2.)  Combined, there has been more than a sufficiently substantial volume of sales and a long enough time frame for actual consumer confusion to have surfaced.  Western Publishing, 910 F.2d at 63 ($168,000 sales of product in seven months was sufficiently substantial and over a long enough period of time for actual confusion to have surfaced).

Further, a survey conducted by Defendants confirms the lack of actual confusion. Dr. Dan Sarel, professor of marketing at the University of Miami, conducted a survey "to find out if there is any knowledge, potential association, or any relationship that consumers may have between Bongos Cuban Cafe and Bongos clothing." (D.E. 62, Tr. of Hr'g, at 202, lines 22-24.)  When asked who they thought owned BONGOS CUBAN CAFE, 80% of the respondents said the Estefans.  (Id. at 209, line 11.)  When asked if they thought BONGOS CUBAN CAFE was sponsored by or associated with any other company, a majority of the respondents said no.  (Id. at 210, line 14.)  Of the 23% that said yes, 61% stated that they thought BONGOS CUBAN CAFE was associated with Disney.  (Id. at 210, line 20.)  Most importantly, no one surveyed indicated any belief

that BONGOS CUBAN CAFE was associated with BONGO clothing.  (See Ex. 3 attached hereto, Dr. Sarel's Report.)

Although evidence of actual confusion "is not a prerequisite to finding likelihood of confusion, its absence nevertheless weighs against that finding."  Life Indus. Corp. v. Star Brite Distrib., Inc., 31 F.3d 42, 47 (2d Cir. 1994).  Accord Amstar, 615 F.2d at 263; Oreck Corp. v. U.S. Floor Sys., Inc., 803 F.2d 166, 173 (5th Cir. 1986). Accordingly, this factor weighs in favor of Defendants in the likelihood of confusion analysis.

### 7.    Defendants' Intent

Plaintiff has presented no evidence to suggest that Defendants were acting with any wrongful intent in adopting their BONGOS CUBAN CAFE mark.  Indeed, it is difficult to image why the sponsors of the BONGOS CUBAN CAFE restaurant, Emilio and Gloria Estefan, would have any interest in associating themselves with Plaintiff. Defendants chose the name BONGOS CUBAN CAFE because it fit with the Cuban theme and called to mind the type of percussion instruments that are a signature element of Gloria Estefan's music and Cuban music generally.  (D.E. 40, Ex. 1, Estefan Aff. ¶ 7.)  Defendants were also taken with the name BONGOS CUBAN CAFE because "Bongo" was the name of one of Mrs. Estefan's three pet Australian wallabies that had died shortly before the name for the restaurant was selected.  (Id.)

Finally, as the noted in the Court's February 12, 1998 Order, the record evidence indicates affirmatively that Defendants acted in good faith. Defendants "consulted legal counsel, researched all potential names to see if there were prior users, and chose a name that they believed did not infringe upon anyone's mark, including Plaintiff's." (D.E. 66, Order Denying Motion for Preliminary Injunction at 18.)  "Good faith can be found if a defendant has selected a mark which reflects the product's characteristics, has requested a trademark search or has relied on the advise of counsel."  W.W.W.

<u>Pharmaceutical Co., Inc.</u>, 984 F.2d at 575.  Accordingly, this factor in the analysis weighs in favor of Defendants.

### 8. <u>Weighing All Factors Together</u>

Consideration of all of the relevant factors in light of the undisputed facts leads inescapably to the conclusion that the reasonable person would not confuse Defendants' BONGOS CUBAN CAFE restaurant and bar with Plaintiff's BONGO clothing line.  As discussed above, Plaintiff has co-existed for many years with restaurants around the country using the name BONGO or BONGOS with no resulting consumer confusion.  Plaintiff has presented no evidence sufficient to prove, or even to suggest, that Defendants' unique, Cuban-themed restaurant/bar cannot also peacefully co-exist in the marketplace.  Accordingly, because the likelihood of confusion is an essential element of Plaintiff's case, its absence mandates the entry of summary judgment in favor of Defendants.

### 9. <u>Actions of the Patent and Trademark Office</u>

Defendant Estefan Enterprises has filed various applications to register the mark BONGOS CUBAN CAFE and associated logos with the United States Patent and Trademark Office ("PTO").  (D.E. 40, Ex. 2, Amadeo Aff. ¶ 9.)  All of those applications are currently pending, although the vast majority of them have now been approved for registration by the PTO.  (<u>See</u> composite Exhibit 2 attached hereto.)  Significantly, Defendant Estefan's application to register the word mark BONGOS CUBAN CAFE for clothing has now been approved for registration by the Trademark Office.  (<u>Id.</u>)

Defendant Estefan filed its first set of trademark applications in September, 1996.  These applications sought to register the words BONGOS CUBAN CAFE (without a design element) for restaurant and bar services and associated souvenir merchandise, including coffee mugs and clothing items, such as t-shirts and sweatshirts.  (<u>See</u> D.E. 11, Plaintiff's Memo. in Support of Mot. for Prelim. Inj., Ex. A attached thereto.)

23

These initial applications were reviewed by Trademark Examiner Kathleen Cooney-Porter. Ms. Cooney-Porter did not cite any of Caruso's marks against any of Defendant Estefan Enterprises' applications to register the word mark BONGOS CUBAN CAFE, concluding that Defendants' BONGOS CUBAN CAFE mark was not confusingly similar to Caruso's BONGO mark. (Id.)

In May and September, 1997, Defendant Estefan Enterprises filed applications to register various logos that had been designed for the restaurant. (D.E. 40, Ex. 2, Amadeo Aff. ¶¶ 7-8.) See also D.E. 11, Plaintiff's Memo. in Support of Mot. for Prelim. Inj., Ex. A attached thereto.) These design mark applications also sought registration of the marks for restaurant and bar services as well as coffee cups and clothing items. Those applications were reviewed by Trademark Examiner Cheryl Butler.

Consistent with the actions of Ms. Cooney-Porter, Ms. Butler did not cite any of Caruso's marks against Estefan Enterprises' applications to register the design marks for restaurant and bar services or for coffee cups. (See D.E. 41, composite Ex. 25.) However, contrary to the actions of Ms. Cooney-Porter, Ms. Butler did cite several of Caruso's trademark registrations against Defendant Estefan Enterprises' applications to register the proposed BONGOS CUBAN CAFE and DESIGN logo for clothing merchandise. (See D.E. 41, composite Ex. 26.)

The initial action of the PTO with regard to Defendant Estefan Enterprises' applications to register the BONGOS CUBAN CAFE marks for restaurant and bar services and for coffee cups supports Defendants' position that there is no likelihood of consumer confusion caused by Defendants' use of the BONGOS CUBAN CAFE mark for those goods and services.

The PTO's action with regard to Defendant Estefan Enterprises' applications to register the BONGOS CUBAN CAFE mark for clothing items neither supports nor contradicts the finding that there is a likelihood of confusion caused by Defendants' use

24

of the BONGOS CUBAN CAFE mark on clothing items, in that two different Trademark Examiners reached two different conclusions on the issue.

It should be noted, however, that in reviewing trademark applications, Trademark Examiners must limit their analysis of the nature and scope of a party's goods or services to the description set forth in the trademark application. Trademark Manual of Examining Procedure, § 1207.01(a)(iii). Therefore, in evaluating Defendant Estefan Enterprises' application to register the BONGOS CUBAN CAFE mark for "clothing, namely t-shirts, tank tops, sweatshirts, sport shirts, jackets, hats, caps [and] shorts" against Caruso's registration of the BONGO mark for "clothing, namely pants, jeans, skirts, blazers, jackets, vests, jumpsuits and blouses," Ms. Butler was obligated to assume that the parties' goods were closely related.

Ms. Butler could not, for example, take into account the fact that Defendants' clothing items are sold only as souvenir merchandise in a gift shop located on the premises of the restaurant, nor did she have the benefit of seeing Defendants' distinctive Cuban-themed facility juxtaposed against Caruso's "All American" advertising images. Therefore, the conclusions of Ms. Butler are of limited persuasive value in any event, given that her conclusions were necessarily based upon artificial assumptions rather than a fully informed evaluation of how the parties' respective marks will be encountered by consumers in the marketplace.

Furthermore, decisions of the PTO are afforded little weight where evidence presented to the court was not before the PTO. Decisions of the PTO are not legally binding upon a district court, and the district court is to determine the issue of likelihood of confusion by applying the multi-prong likelihood of confusion test. See Packerware Corp. v. Corning Consumer Prods. Co., 895 F. Supp. 1438, 1449 (D. Kan. 1995). A decision of the PTO is rendered less persuasive where the district court has before it evidence that was not before the PTO. In fact, Ms. Butler has, as of the date of this motion, effectively acknowledged that the Court's decisions on these issues

should prevail over her own decisions by suspending all action on the remaining applications to register the BONGOS CUBAN CAFE logos for clothing pending the outcome of this litigation. (See composite Ex. 2 attached hereto.)   Accordingly, the preliminary conclusions of Ms. Butler on those applications are of little, if any, persuasive value.

**B.  Defendants' Use of the Mark BONGOS CUBAN CAFE for its Restaurant and Associated Merchandise Will Not Dilute Caruso's BONGO Trademark.**

The federal dilution remedy was designed to protect the distinctive character of those very unique and world-famous trademarks that have become truly renowned amongst the general public. McCarthy, supra, § 24:91 at 24-140. The theory behind the Act is that, in some instances, the owner of a uniquely famous trademark should be allowed to prevent use of its name by others even where there exists no likelihood of consumer confusion, such as where the mark is being used on non-competitive goods. Id. § 24:68 at 24-112.   Cited examples of what might constitute dilution include DUPONT shoes, BUICK aspirin, and KODAK pianos. H.R.Rep. No. 374, 104th Cong., 1st Sess. 4 (1995), U.S. Code Cong. & Admin. News at 1029, 1031 ("House Report").

For numerous reasons, the dilution claim asserted by Caruso in this case must fail. First, Caruso's BONGO mark does not fall into that unique category of marks that can be considered "famous." Second, the mark BONGO or BONGOS is already in use by a variety of other companies for a variety of other goods and services. Therefore, Caruso cannot show that its mark has achieved the requisite level of distinctiveness in the marketplace such that use of the same or similar mark by others on non-competing goods is likely to harm the value of Defendants' mark.   Finally,

Defendants' BONGOS CUBAN CAFE mark is not sufficiently similar to Plaintiff's BONGO mark such that dilution is likely to occur.

> ### 1.    <u>Caruso's Marks Are Not Famous.</u>

There can be no dilution of a mark if the mark itself is not considered "famous." The legislative history of the Federal Trademark Dilution Act states:

> Section 43(c) of the Act is to be applied selectively and is intended to provide protection only to those marks which are both truly distinctive and famous. . . . [the committee wishes] to underscore its determination that the new dilution provisions should apply only to those very unique mark[s]

McCarthy, <u>supra</u>, § 24:92 at 24-144, (<u>quoting</u> Senate Judiciary Committee Report on S. 1883, S. Rep. No. 100-515, pp. 41-42 (Sept. 15, 1988)). <u>See also</u> <u>Star Markets, Ltd. v. Texaco, Inc.</u>, 950 F. Supp. 1030, 1033 (D. Hawaii 1996) ("A mark must be especially famous and distinctive to warrant protection under the [Federal Anti-Dilution] Act").

The Act provides various factors for courts to consider in determining if a mark is famous. <u>See</u> 15 U.S.C. §1125(c)(1). Consideration of these factors demonstrates clearly that Caruso's BONGO mark does not fall into the select category of unique marks that can be considered "famous" under the Act.

> ### a.    **Inherent Distinctiveness**

To be famous, the mark must "clearly be more than just distinctive in a trademark sense." <u>King of the Mountain Sports, Inc. v. Chrysler Corp.</u>, 968 F. Supp. 568, 578 (D. Colo. 1997); <u>see</u> McCarthy, <u>supra</u>, § 24:91 at 24-142 ("all 'trademarks' are 'distinctive'-- very few are 'famous'") .

A trademark is considered sufficiently distinctive to be subject to dilution "if the mark retains its source significance when encountered outside the context of goods or services with which it is used by the trademark owner." <u>RESTATEMENT (THIRD) OF</u>

UNFAIR COMPETITION, § 25, comment e (1995).  For example, the marks KODAK, BUICK and EXXON evoke a respective association with camera products, cars and gasoline even when those marks appear separate and apart from the products they identify.  See McCarthy, supra, § 24:92 at 24-144.  Such marks are so distinctive that they immediately signify a particular product to the consumer.

Conversely, marks that are not recognizable to members of the general public as signifying a particular product or service--even though they might be considered distinctive in a certain market--are not deemed famous.  See King of the Mountain Sports, 968 F. Supp. at 578 (despite fact mark acquired certain distinctiveness in narrow market, court held mark KING OF THE MOUNTAIN for hunting apparel was not famous because "persons outside plaintiff's niche market would [not] associate the phrase 'King of the Mountain' with the plaintiff"); Golden Bear Int'l. v. Bear U.S.A., Inc., 969 F. Supp. 742, 749 (N.D. Ga. 1996) (despite fact that mark was widely publicized and recognized to purchasers in a particular market, not clear that mark is famous to members of general public; mark "certainly does not rise to the level of marks such as Exxon, Kodak, and Coca-Cola which have been found to be generally famous").

Caruso's marks, like those in King of the Mountain and Golden Bear, may have acquired a certain distinctiveness in the junior women's retail clothing market. However, there is no evidence to show that the general public immediately associates the mark BONGO with Caruso's clothing products.  To the contrary, the evidence establishes that consumers have been exposed to a plethora of different products and services marketed under the trademark BONGO or BONGOS.  Accordingly, Caruso's BONGO trademark does not rise to the level of "distinctiveness" necessary to prove that the mark is famous under the Act.

### b.    Duration of Use

Caruso alleges that its BONGO mark has been in use for 15 years.  (D.E. 41, Ex. 32, Pl's. Resp to Defs.' First Set of Interrogs., Interrog. No. 3, at 6.)  Such duration of use is not itself sufficient to render Plaintiff's marks famous.  Compare Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. B.E. Windows Corp., 937 F. Supp. 204, 210 (125 years; held famous); Sunbeam Products, Inc. v. West Bend Co., 39 U.S.P.Q.2d 1545, 1546-7 (S.D. Miss. 1996) (70 years; held famous) with Star Markets, Ltd, 950 F. Supp. at 1034 (46 years; held not famous); Genovese Drug Stores, Inc. v. TGC Stores, Inc., 939 F. Supp. 340, 349  (D. N.J. 1996) (9 years; held not famous).

Because Plaintiff's marks have not been in use for a sufficiently significant number of years, this factor weighs against a finding of fame in Plaintiff's BONGO mark.

### c.    Nature and Extent of Advertising

Caruso alleges that it has expended approximately $15 million in advertising since 1993.  (D.E. 10, Kail Aff. ¶ 11.)  Even accepting that figure as accurate, a substantial portion of those advertising dollars were spent on production costs (i.e., photo shoots, filming of television advertisements, etc.) rather than costs associated with putting Caruso's marks before the public.  (D.E. 41, Ex. 27; D.E. 41, Ex. 28, Depo. Test. of Kail, at 44-46.)  Moreover, Caruso spent substantially more money advertising its products during the past few years than it has during most of the years it has been in business.  (D.E. 41, Ex. 29, Depo. Test. of Kail, at 43.)  This amount of advertising is not itself sufficient to establish that Caruso's marks are famous.  See, e.g., Star Markets, 950 F. Supp. at 1034 ($30 million in extensive advertising not sufficient to find mark famous under Act).

Caruso's claim of famousness is further undermined by the fact that the vast majority of its advertising efforts are directed to a narrow segment of the purchasing public, namely, young women.  In fact, Caruso concedes that only a tiny portion of its

product line consists of men's clothing products. (D.E. 41, Ex. 30, Depo. Test. of Kail, at 35-36. See also D.E. 40, Ex. 6.)  In fact, over the past five years, 90% of Plaintiff's sales were for junior clothing.  (D.E. 62, Tr. of Hr'g., at 61, line 21.)  Junior clothing refers only to woman's clothing.  (Id. at 79, line 10.)  Given that only a tiny percentage of Caruso's advertising is targeted to men, Caruso cannot show that its BONGO mark is famous among the general public.  See, e.g., Mead Data, 875 F.2d at 1030-32 (where plaintiff's product was targeted only to a narrow segment of the market, plaintiff's LEXIS mark "has no distinctive quality that LEXUS will dilute").

### d.    Geographical Extent Used

As stated above, although Caruso markets its products nationwide, the vast majority of its advertising is targeted at a specific limited group of consumers. Therefore, as in the Mead Data case, Caruso's BONGO products have not achieved sufficient exposure amongst the general public nationwide to be considered famous. See id.

### e.    Degree of Recognition in Channels of Trade

Caruso's president estimates that its market share even in its principal market, namely, the denim clothing market, is only 5%.  He further estimates that Caruso's market share for the junior apparel industry generally is much smaller than that. (D.E. 41, Ex. 31, Depo. Test. of Kail, at 35.)  The fact that Caruso's market share is so small weighs heavily against a finding that Caruso's BONGO mark is famous within the meaning of the federal dilution statute.  See, e.g., Novo Nordisk of North Am., Inc. v. Eli Lilly and Co., Case No. 96 Civ. 5787 (BSJ), 1996 WL 497018, at *3 n.16 (S.D.N.Y. 1996) (plaintiff's mark could not be considered famous where the plaintiff had acquired only 1% of the entire market for the goods produced).

### f.    Use by Third Parties

To be famous, a mark must be in substantially exclusive use.  See Nailtiques Cosmetic Corp. v. Salon Sciences Corp., 41 U.S.P.Q.2d 1995, 1998 (S.D. Fla. 1997)

("dilution is the 'diminution of distinctive value, usually in the form of a loss of exclusivity"); McCarthy, supra, § 24:92 at 24-150.  As stated by the House Judiciary Committee in discussing the proposed Federal Anti-Dilution Act, "[dilution] applies when the unauthorized use of a famous mark reduces the public's perception that the mark signifies something unique, singular, or particular."  H.R.Rep. No. 374, 1996 U.S.C.C.A.N. at 1031.

Accordingly, if there is extensive third-party use of a mark -- whether or not it is in the relevant market -- then the mark cannot be considered "famous" because the mark could not signify something "unique, singular or particular."  Trustees of Columbia Univ. v. Columbia/HCA Healthcare Corp., 964 F. Supp. 733, 750 (S.D.N.Y. 1997) (any claim of distinctiveness for federal dilution purposes is "seriously undermined by third party use of the same or similar marks"); Sports Auth., Inc. v. Abercrombie & Fitch, Inc., 965 F. Supp. 925, 941 (E.D. Mich. 1997) (term AUTHORITY in mark SPORTS AUTHORITY held not famous because of third-party use of term); Star Markets, Ltd., 950 F. Supp. at 1035 (third-party use of term STAR throughout U.S. weighs heavily in favor of defendants in federal dilution claim).

As discussed above, third-party use of marks using or incorporating the term BONGO or BONGOS is extensive.  The public does not, and cannot, associate Caruso's BONGO mark with a single source because Caruso is not the exclusive user of the term "BONGO."  Accordingly, any distinctiveness Caruso might have acquired in its BONGO mark is seriously undermined by such third party use.  For this reason alone, Caruso's claim of famousness under the Federal Anti-Dilution Act must be rejected.

### g.    Balancing the Factors

Caruso has failed to make the requisite showing to prove that its BONGO mark is famous.  Where a plaintiff's mark is not famous, there can be no dilution.

## 2.    <u>There is No Likelihood of Dilution.</u>

Even assuming, <u>arguendo</u>, that Caruso's BONGO mark can be considered famous under the Act, Caruso's dilution claim nevertheless fails because Caruso cannot show that Defendants' use of the mark BONGOS CUBAN CAFE is likely to dilute the value of Caruso's mark.

### a.    Caruso cannot prove that Defendants' use of the mark BONGOS CUBAN CAFE will dilute the value of Plaintiff's marks.

Plaintiff alleges dilution by "blurring." (D.E. 11, Plaintiff's Memo. in Support of Mot. for Prelim. Inj., at 12.) "Blurring" has been defined as "injury to a mark's selling power, [which] occurs when there is a possibility that Plaintiff's mark will lose its ability to serve as a unique identifier of Plaintiff's product[s.]" <u>Ringling Bros.</u>, 937 F. Supp. at 211. Dilution by blurring is further explained by Professor McCarthy as follows:

> Customers or prospective customers will see the plaintiff's mark used by other persons to identify different sources on a plethora of different goods and services. The unique and distinctive significance of the mark to identify and distinguish one source may be diluted and weakened.

McCarthy, <u>supra</u>, § 24:94, at 24-151.

As is evident from the foregoing explanations, dilution by blurring presupposes that a plaintiff's mark has a unique significance among consumers as signifying plaintiff's goods or services--and <u>only</u> plaintiff's goods or services. A cause of action for dilution by blurring is, in essence, designed to permit a trademark owner to maintain the monopoly in a particular term or phrase that it has developed over a period of long and extensive use.

For example, the mark KODAK has been in virtually exclusive use by Eastman Kodak Co. for many years. As a result of the fame and unique significance that that mark has acquired over time, a cause of action for dilution will allow Eastman Kodak

32

to prevent entry of others into the marketplace who wish to sell KODAK bagels, KODAK jet skis, and the like.

Put into this context, it is immediately apparent why Caruso cannot sustain a cause of action for dilution of its BONGO trademark. Caruso's BONGO mark does not have a "unique significance" amongst the purchasing public that could possibly be compromised. As is discussed at length above, others in the marketplace have been selling BONGO ice cream, BONGO potato chips, BONGO comic books, BONGO burgers and so on for many years. Accordingly, Caruso's BONGO mark does not have a unique and distinctive value that is capable of being "blurred" by Defendants' use of the BONGOS CUBAN CAFE mark.

In light of the foregoing, it is clear, without the need for further inquiry, that Caruso is not likely to prevail on the merits of its dilution claim. This conclusion is supported by consideration of the various "factors" considered by courts to be relevant in determining the viability of a claim for dilution by blurring, as discussed below.

### b. Caruso does not have sufficient evidence to prove a likelihood of dilution.

Most courts have adopted a six factor test, which originated in the Second Circuit, to determine if there is a likelihood of dilution by blurring. The six factors to consider are: (1) similarity of the marks, (2) similarity of the products, (3) sophistication of customers, (4) predatory intent, (5) renown of senior mark, and (6) renown of junior mark. See Mead Data, 875 F.2d at 1035, 10 U.S.P.Q.2d 1961 (Sweet, J., concurring); Ringling Bros. Barnum & Bailey Combined Show, Inc. v. Utah Div. of Travel, 955 F. Supp. 605, 614, (E.E. Va. 1997); American Express Co. v. CFK, Inc., 947 F. Supp. at 317, 41 U.S.P.Q.2d 1756. Evaluation of these factors supports the conclusion that Defendants' use of the mark BONGOS CUBAN CAFE will not dilute the distinctive value of Caruso's BONGO mark.

### (1)    Similarity of the Marks

For dilution to occur, the marks in question "must be 'very' or 'substantially' similar and . . . absent such similarity, there can be no viable claim of dilution." As evidenced by the cases applying this standard, the degree of similarity required to establish dilution is very high. See, e.g., Ringling Bros., 937 F. Supp. at 211-12 (THE GREATEST BAR ON EARTH held not similar to THE GREATEST SHOW ON EARTH because of the inherent difference in the words "show" and "bar" as well as the common use of the remainder of the phrase) (quoting Mead Data, 875 F.2d at 1029-30 (held no substantial similarity between marks LEXUS and LEXIS)); Utah Div. of Travel Dev., 955 F. Supp. 605, 619, (E.D. VA 1997) (THE GREATEST SNOW ON EARTH held not similar to THE GREATEST SHOW ON EARTH despite superficial similarities, which are undermined by ease with which people can distinguish SNOW and SHOW).

As discussed above, Defendants' BONGOS CUBAN CAFE mark is not similar to Plaintiff's BONGO mark.   What similarities do exist between Plaintiff's and Defendants' marks do not rise to the level of "substantial similarity" required to prove dilution. As stated by the court in Utah Division of Travel, in finding no substantial similarity between THE GREATEST BAR ON EARTH and THE GREATEST SHOW ON EARTH,

> the human mind has the capacity to recognize the distinctiveness of a multiplicity of concepts, ideas and images without confusion or association.  And this is true even where the concepts are closely related, or where the words signifying different concepts are similar in form or sound.

Id. at 614, 42 U.S.P.Q.2d 1161.

Here, although though the marks BONGO and BONGOS CUBAN CAFE share a similar term, there are obvious and marked dissimilarities between the marks and the way those marks appear in the marketplace.  Because of the substantial differences in

the meaning and the overall impression of the marks, consumers will have no difficulty distinguishing the marks in the market place.

### (2)    Similarity of the Products

The more the products covered by the marks are dissimilar, the stronger of a showing of potential blurring is required than if the products were similar. Ringling Bros., 937 F. Supp. at 212. As discussed above, Plaintiff's and Defendants' products and services are neither similar nor related. Therefore, Plaintiff bears a heavy burden in this case to show that dilution by blurring will occur.

### (3)    Sophistication of Customers

This factor focuses exclusively on the sophistication of Plaintiff's consumers. Mead Data, 875 F.2d at 1031-32 (blurring unlikely between LEXUS for automobiles and LEXIS for computer research system because of the level of sophistication of consumers of LEXIS product). Here, Plaintiff's consumers are relatively sophisticated, in that department store buyers and consumers shopping for wearing apparel are likely to be discerning in making purchasing decisions. See, e.g., Sally Gee, Inc. v. Myra Hogan, Inc., 699 F.2d 621, 626 (2d Cir. 1983) ("Sophisticated retailers and discerning consumers of women's apparel are unlikely to have blurred vision causing them to see 'Sally Gee' upon viewing a Sally Lee label"). Thus, this factor also weighs against a finding that dilution by blurring is likely.

### (4)    Predatory Intent

To prove that a defendant had a predatory intent, a plaintiff must show that "the junior user adopted its mark hoping to benefit commercially from association with the senior mark." Mead Data, 875 F.2d at 1037; Ringling Bros., 937 F. Supp. at 213. Caruso has presented no evidence of predatory intent in this case. As stated above, it is difficult to imagine why Defendants would have any need or interest in associating themselves with the Plaintiff.

### (5)    Renown of Senior Mark

As shown above, Caruso's marks are not famous. In addition to being precluded from receiving protection under the statute, there is also less of a likelihood that consumers will make the mental association between Caruso's marks and Defendants' marks. In addition, Plaintiff will not lose its ability to sell its goods as a result of Defendants' use of its marks. See Ringling Bros., 937 F. Supp. at 210-11.

### (6)    Renown of Junior Mark

Defendants agree with Plaintiff that, because Defendants have just recently entered the market, this factor in the dilution analysis is not relevant. (D.E. 11, Plaintiff's Memo. in Support of Mot. for Prelim. Inj., at 13.) Therefore, this factor weighs neither for nor against a finding a dilution.

### (7)    Balancing the Factors

As is demonstrated by consideration of the foregoing factors, Caruso is not able to demonstrate that Defendants' use of the BONGOS CUBAN CAFE mark in connection with a restaurant and souvenir merchandise is likely to dilute the value of Caruso's BONGO mark for clothing. Accordingly, Caruso's federal dilution claim cannot form the basis for entry of a preliminary injunction in this case.

### 3.    Caruso's Claim Under the Florida Anti-Dilution Act Must Also Fail.

Section 495.151 of the Florida Statutes states that a court shall enjoin a user of the "same or any similar mark...if it appears to the court that there exists a likelihood of injury to business reputation or of dilution of the distinctive quality of the mark...notwithstanding the absence of competition between the parties or of confusion as to the source of the goods."

In addition to the statutory requirement that the marks be similar, Florida courts require that a plaintiff's mark be unique or distinctive to be entitled to protection. Glen Raven Mills, Inc. v. Ramada Int'l, Inc., 852 F. Supp. 1544, 1554 (M.D.

Fla. 1994).  As discussed <u>supra</u>, Defendants' mark is not substantially similar to Caruso's marks.  Further, given the extensive third-party use of the term BONGO or BONGOS in the marketplace, Caruso's BONGO mark cannot be considered distinctive for purposes of establishing a claim for dilution under Florida law.  <u>Anheuser-Busch, Inc. v. A-B Distrib., Inc.</u>, 910 F. Supp. 587, 595 (M.D. Fla. 1995); <u>Ice Cold Auto Air of Clearwater, Inc. v. Cold Air & Accessories, Inc.</u>, 828 F. Supp. 925, 940 (M.D. Fla. 1993). Accordingly, Caruso is not likely to succeed on the merits of its Florida dilution claim.

## CONCLUSION

Based upon the foregoing, Defendants respectfully request that summary judgment be entered in favor of Defendants on all counts of Plaintiff's Complaint and that this case be dismissed with prejudice.

Respectfully submitted,

**HOLLAND & KNIGHT LLP**
701 Brickell Avenue
Suite 3000
Miami, FL  33101
Tel: (305) 374-8500
Fax: (305) 789-7799

Wilfredo A. Rodriguez
Fla. Bar No. 334936
Vivian Rodriguez Riveiro
Fla. Bar No. 0021482

**HOLLAND & KNIGHT LLP**         Counsel for Defendants Estefan
Leslie S. Spitalney                          Enterprises, Inc.
Florida Bar No. 969095                  and Bongos Cuban Café

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this _11th_ day of September, 1998, the foregoing DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT was served **via hand delivery** to David K. Friedland, Esq., Lott & Friedland, P.A., Attorneys for Plaintiff, 255 Alhambra Circle, Suite 555, Coral Gables, Florida.

 

_____
Vivian Rodriguez Riveiro

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

MICHAEL CARUSO & CO., INC.,

      Plaintiff,

v.                                    CA NO. 97-2993-CIV-KING

ESTEFAN ENTERPRISES, INC. AND        MAGISTRATE JUDGE TURNOFF
BONGOS CUBAN CAFE, INC.

      Defendants.
_____/

## AFFIDAVIT OF FRANK AMADEO

STATE OF FLORIDA )
                  ) SS:
COUNTY OF DADE   )

      BEFORE ME, the undersigned authority, personally appeared Frank Amadeo who, being first duly sworn, deposes and says:

      1.     My name is Frank Amadeo. I am Vice President of Defendant Estefan Enterprises, Inc. ("Estefan Enterprises"). I am also Assistant to the President of Defendant Bongos Cuban Cafe, Inc. ("Bongos Cuban Cafe"). I make this affidavit on personal knowledge.

      2.     Defendant Bongos Cuban Cafe's sale of souvenir merchandise is a very minor part of its business. As of July 31, 1998, Defendant Bongos Cuban Cafe has experienced total sales of $11,013,638.13, since the opening of its restaurant/bar. Of that amount, only $719,167.83, or 6.53%, is attributable to sales of souvenir merchandise. Further, of the $719,167.83 attributable to sales of souvenir merchandise, only $251,708.74 is attributable to sale of souvenir clothing items, such as t-shirts and

sweatshirts.   Therefore, to date, Defendant Bongos Cuban Cafe's sale of souvenir clothing items represents only 2.28% of its total revenue.

3.     The foregoing statements are true to the best of my personal knowledge.

FURTHER AFFIANT SAYETH NAUGHT.

_Frank Amadeo_

The foregoing instrument was acknowledged before me this __8th__ day of September, 1998, by Frank Amadeo who is personally known to me/has produced ___ _____ as identification and who did/did not take an oath.

(SEAL)

Notary Public-State of Florida

MIA4-653690

Jorge L. Hernandez-Torano
MY COMMISSION # CC676418 EXPIRES
November 30, 2001
BONDED THRU TROY FAIN INSURANCE, INC.

2



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trade Office

ASSISTANT COMMISSIONER FOR TRADEMARKS
2900 Crystal Drive
Arlington, Virginia 22202-3513

Jul 17, 1998

NOTICE OF PUBLICATION UNDER 12(a)

1. Serial No.:
   75/311,907

2. Mark:
   BONGOS CUBAN CAFE

3. International Class(es):
   25

4. Publication Date:
   Aug 18, 1998

5. Applicant:
   Estefan Enterprises, Inc.

The mark of the application identified appears to be entitled to registration. The mark will, in accordance with Section 12(a) of the Trademark Act of 1946, as amended, be published in the Official Gazette on the date indicated above for the purpose of opposition by any person who believes he will be damaged by the registration of the mark. If no opposition is filed within the time specified by Section 13(a) of the Statute or by rules 2.101 or 2.102 of the Trademark Rules, the Commissioner of Patents and Trademarks may issue a notice of allowance pursuant to section 13(b) of the Statute.

Copies of the trademark portion of the Official Gazette containing the publication of the mark may be obtained at $38.00 each for domestic orders, or at $47.50 each for foreign orders from:

The Superintendent of Documents
U.S. Government Printing Office
PO Box 371954
Pittsburgh, PA 15250-7954
Phone: (202)512-1800

By direction of the Commissioner.

HOLLAND & KNIGHT
DOCKETED
Date: 07.23.98
By:

CLASS 25—(Continued).

SN 75-304,737. XULU ENTERTAINMENT INC., SAN JOSE, CA. FILED 6-6-1997.

# XULU

FOR CLOTHING, NAMELY, T-SHIRTS, SWEATSHIRTS, SWEATERS, POLO SHIRTS, ATHLETIC UNIFORMS, JACKETS, COATS, HATS, CAPS, SUNVISORS, SHORTS, PANTS, JEANS, SKIRTS, DRESSES, LINGERIE, UNDERWEAR, BEACHWEAR, BATHING SUITS, RAINWEAR, PAJAMAS, ROBES, TIES, BELTS, SCARVES, GLOVES, MITTENS, SOCKS, HOSIERY, SHOES, SHOELACES, ATHLETIC FOOTWEAR, AND COSTUMES AND MASKS SOLD IN CONNECTION THEREWITH (U.S. CLS. 22 AND 39).

SN 75-309,263. VALLEY SPECIALTIES - DLK ORIGINALS, INC., SUGARLOAF, PA. FILED 6-16-1997.



NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "SPECIALTIES" AND "ORIGINALS INC.", APART FROM THE MARK AS SHOWN.

FOR SPORTSWEAR AND CLOTHING, NAMELY, HATS, SHIRTS, SWEATERS, JACKETS, COATS, PANTS, TURTLENECKS AND PANTS (U.S. CLS. 22 AND 39).

FIRST USE 6-6-1995; IN COMMERCE 10-0-1995.

SN 75-311,907. ESTEFAN ENTERPRISES, INC., MIAMI BEACH, FL. FILED 9-17-1996.

# BONGOS CUBAN CAFE

FOR SOUVENIR CLOTHING ITEMS, NAMELY, T-SHIRTS, CAPS, HATS, JACKETS, SHIRTS, SWEATSHIRTS, SWEATERS, TROUSERS, SHORTS, BATHING SUITS, UNDERGARMENTS, TIES, SUSPENDERS, SHOES, SLIPPERS, COATS, RAINCOATS, NIGHTDRESSES AND PAJAMAS, SOLD TO PROMOTE A RESTAURANT (U.S. CLS. 22 AND 39).

---

CLASS 25—(Continued).

SN 75-318,931. CHAMBERLAIN, ROY I., DBA KOALA TREE INTERNATIONAL PRODUCTS, COTTONTOWN, TN. FILED 7-3-1997.

# KOALA TREE BIRD GLOVE

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "GLOVE", APART FROM THE MARK AS SHOWN.

FOR GLOVES FOR FASHION AND DECORATIVE USE (U.S. CLS. 22 AND 39).

SN 75-319,874. ARTEMIS INNOVATIONS INC., TORRANCE, CA. FILED 7-7-1997.



FOR FOOTWEAR AND HEADWEAR (U.S. CLS. 22 AND 39).

FIRST USE 7-18-1997; IN COMMERCE 7-18-1997.

SN 75-321,137. MIZUNO KABUSHIKI KAISHA (MIZUNO CORPORATION), OSAKA, JAPAN, FILED 7-8-1997.



MIZUNO WAVE

OWNER OF U.S. REG. NOS. 921,051, 1,966,420 AND OTHERS.

FOR BASEBALL SHOES, SOFTBALL SHOES; BADMINTON SHOES; TENNIS SHOES; TABLE TENNIS SHOES; BASKETBALL SHOES; GOLF SHOES; GOLF SHOES WITH SPIKES; AND SPIKES FOR GOLF SHOES, FOOTBALL SHOES; FOOTBALL SHOES CLEATS; VOLLEYBALL SHOES; HOCKEY SHOES; ARCHERY SHOES; HANDBALL SHOES; WRESTLING SHOES; RUNNING SHOES WITH SPIKES, TRACK AND FIELD SHOES; WALKING AND CLIMBING FOOTWEAR; GYMNASTIC SHOES; WEIGHT LIFTING SHOES; BOXING SHOES; SOCCER SHOES, SOCCER SHOES CLEATS; RUGBY SHOES, RUGBY SHOES CLEATS; CROSS TRAINING SHOES, RACQUET BALL SHOES, SQUASH SHOES (U.S. CLS. 22 AND 39).

---





**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office

ASSISTANT COMMISSIONER FOR TRADEMARKS
2900 Crystal Drive
Arlington, Virginia 22202-3513

Jun 26, 1998

NOTICE OF PUBLICATION UNDER 12(a)

1. Serial No.:
   75/290,710

2. Mark:
   BONGOS CUBAN CAFE
   and design

3. International Class(es):
   21

4. Publication Date:
   Jul 23, 1998

5. Applicant:
   Estefan Enterprises, Inc.

The mark of the application identified appears to be entitled to registration. The mark will, in accordance with Section 12(a) of the Trademark Act of 1946, as amended, be published in the Official Gazette on the date indicated above for the purpose of opposition by any person who believes he will be damaged by the registration of the mark. If no opposition is filed within the time specified by Section 13(a) of the Statute or by rules 2.101 or 2.102 of the Trademark Rules, the Commissioner of Patents and Trademarks may issue a notice of allowance pursuant to section 13(b) of the Statute.

Copies of the trademark portion of the Official Gazette containing the publication of the mark may be obtained at $38.00  each for domestic orders, or at $47.50 each for foreign orders from:

The Superintendent of Documents
U.S. Government Printing Office
PO Box 371954
Pittsburgh, PA  15250-7954
Phone: (202)512-1800

By direction of the Commissioner.

HOLLAND & KNIGHT
DOCKETED
Date: 07.02.98



TM 402         OFFICIAL GAZETTE         JULY 28, 1998

**CLASS 21—(Continued).**

SN 75-275,694. BETZELBERGER-JUSTICE PARTNERSHIP, DALLAS, TX. FILED 4-14-1997.

# PITCHER SICLE

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "PITCHER", APART FROM THE MARK AS SHOWN.
FOR MOMMETAL AND NONMEDICAL REUSABLE BEVERAGE ICE PACK (U.S. CLS. 2, 13, 23, 29, 30, 33, 40 AND 50).

---

SN 75-276,139. INNOVATIVE HOMEWARE CONCEPTS, INC., MORGANVILLE, NJ. FILED 4-17-1997.

# SCRUBANDLE

FOR HOLDERS FOR MESH CLEANING PADS AND SCOURING PADS (U.S. CLS. 2, 13, 23, 29, 30, 33, 40 AND 50).
FIRST USE 8-7-1996; IN COMMERCE 1-0-1997.

---

SN 75-282,986. UNIONE RISTORANTI DEL BUON RI-CORDO, I-27100 PAVIA, ITALY, FILED 4-28-1997.




BUON RICORDO

PRIORITY CLAIMED UNDER SEC. 44(D) ON ITALY APPLICATION NO. MI97C000320, FILED 1-17-1997, REG. NO. 682153, DATED 8-29-1997, EXPIRES 1-17-2017.
THE MARK CONSISTS OF THE WORDS "BUON RI-CORDO" AND AN ENCIRCLED STYLIZED LETTER "B".
THE WORDS "BUON RICORDO" CAN BE TRANSLAT-ED AS "GOOD MEMORY".
FOR PLATES, CUPS AND CROCKERY, NAMELY, POTS, PITCHERS, JUGS, BOWLS (U.S. CLS. 2, 13, 23, 29, 30, 33, 40 AND 50).

**CLASS 21—(Continued).**

SN 75-290,709. ESTEFAN ENTERPRISES, INC., MIAMI BEACH, FL. FILED 5-12-1997.



THE APPLICATION IS LINED FOR THE COLORS RED, YELLOW, AND GREEN.
FOR COFFEE MUGS (U.S. CLS. 2, 13, 23, 29, 30, 33, 40 AND 50).

---

SN 75-290,710. ESTEFAN ENTERPRISES, INC., MIAMI BEACH, FL. FILED 5-12-1997.



THE APPLICATION IS LINED FOR THE COLORS RED, YELLOW AND GREEN.
FOR COFFEE MUGS (U.S. CLS. 2, 13, 23, 29, 30, 33, 40 AND 50).



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**

ASSISTANT COMMISSIONER FOR TRADEMARKS
2900 Crystal Drive
Arlington, Virginia 22202-3513

Jun 26, 1998

## NOTICE OF PUBLICATION UNDER 12(a)

1. Serial No.:
   75/290,709

2. Mark:
   BONGOS CUBAN CAFE
   and design

3. International Class(es):
   21

4. Publication Date:
   Jul 28, 1998

5. Applicant:
   Estefan Enterprises, Inc.

The mark of the application identified appears to be entitled to registration. The mark will, in accordance with Section 12(a) of the Trademark Act of 1946, as amended, be published in the Official Gazette on the date indicated above for the purpose of opposition by any person who believes he will be damaged by the registration of the mark. If no opposition is filed within the time specified by Section 13(a) of the Statute or by rules 2.101 or 2.102 of the Trademark Rules, the Commissioner of Patents and Trademarks may issue a notice of allowance pursuant to section 13(b) of the Statute.

Copies of the trademark portion of the Official Gazette containing the publication of the mark may be obtained at $38.00 each for domestic orders, or at $47.50 each for foreign orders from:

The Superintendent of Documents
U.S. Government Printing Office
PO Box 371954
Pittsburgh, PA 15250-7954
Phone: (202)512-1800

By direction of the Commissioner.

HOLLAND & KNIGHT
DOCKETED
Date 07-02-98
By:

TM 402                    OFFICIAL GAZETTE                    JULY 23, 1998

CLASS 21—(Continued).

CLASS 21—(Continued).

SN 75-275,694. BETZELBERGER-JUSTICE PARTNERSHIP, DALLAS, TX. FILED 4-14-1997.

SN 75-290,709. ESTEFAN ENTERPRISES, INC., MIAMI BEACH, FL. FILED 5-12-1997.



# PITCHER SICLE

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "PITCHER", APART FROM THE MARK AS SHOWN.
FOR MOMMETAL AND NONMEDICAL REUSABLE BEVERAGE ICE PACK (U.S. CLS. 2, 13, 23, 29, 30, 33, 40 AND 50).



SN 75-276,139. INNOVATIVE HOMEWARE CONCEPTS, INC., MORGANVILLE, NJ. FILED 4-17-1997.

THE APPLICATION IS LINED FOR THE COLORS RED, YELLOW, AND GREEN.
FOR COFFEE MUGS (U.S. CLS. 2, 13, 23, 29, 30, 33, 40 AND 50).

# SCRUBANDLE



FOR HOLDERS FOR MESH CLEANING PADS AND SCOURING PADS (U.S. CLS. 2, 13, 23, 29, 30, 33, 40 AND 50).
FIRST USE 8-7-1996; IN COMMERCE 1-0-1997.

SN 75-290,710. ESTEFAN ENTERPRISES, INC., MIAMI BEACH, FL. FILED 5-12-1997.

SN 75-282,986. UNIONE RISTORANTI DEL BUON RICORDO, I-27100 PAVIA, ITALY. FILED 4-28-1997.

 BUON RICORDO



PRIORITY CLAIMED UNDER SEC. 44(D) ON ITALY APPLICATION NO. MI97C000320, FILED 1-17-1997, REG. NO. 682153, DATED 8-29-1997, EXPIRES 1-17-2017.
THE MARK CONSISTS OF THE WORDS "BUON RICORDO" AND AN ENCIRCLED STYLIZED LETTER "B".
THE WORDS "BUON RICORDO" CAN BE TRANSLATED AS "GOOD MEMORY".
FOR PLATES, CUPS AND CROCKERY, NAMELY, POTS, PITCHERS, JUGS, BOWLS (U.S. CLS. 2, 13, 23, 29, 30, 33, 40 AND 50).

THE APPLICATION IS LINED FOR THE COLORS RED, YELLOW AND GREEN.
FOR COFFEE MUGS (U.S. CLS. 2, 13, 23, 29, 30, 33, 40 AND 50).



**UNITED STATES  EPARTMENT OF COMMERCE**
**Patent and Trademark Office**

ASSISTANT COMMISSIONER FOR TRADEMARKS
2900 Crystal Drive
Arlington, Virginia 22202-3513

Jul 3, 1998

## NOTICE OF PUBLICATION UNDER 12(a)

1. Serial No.:
   75/290,705

2. Mark:
   BONGOS CUBAN CAFE
   and design

3. International Class(es):
   21

4. Publication Date:
   Aug 4, 1998

5. Applicant:
   Estefan Enterprises, Inc.

The mark of the application identified appears to be entitled to registration. The mark will, in accordance with Section 12(a) of the Trademark Act of 1946, as amended, be published in the Official Gazette on the date indicated above for the purpose of opposition by any person who believes he will be damaged by the registration of the mark.  If no opposition is filed within the time specified by Section 13(a) of the Statute or by rules 2.101 or 2.102 of the Trademark Rules, the Commissioner of Patents and Trademarks may issue a notice of allowance pursuant to section 13(b) of the Statute.

Copies of the trademark portion of the Official Gazette containing the publication of the mark may be obtained at $38.00   each for domestic orders, or at $47.50 each for foreign orders from:

The Superintendent of Documents
U.S. Government Printing Office
PO Box 371954
Pittsburgh, PA  15250-7954
Phone: (202)512-1800

By direction of the Commissioner.

HOLLAND & KNIGHT
DOCKETED
Date: _07. 07. 98_
By: _____

TM 162  OFFICIAL GAZETTE  AUGUST [...] 1998  U.S. PAT [...]

CLASS 21—(Continued).

SN 75-281,472. SMART & FINAL STORES CORPORATION, VERNON, CA. FILED 4-25-1997.

# Smart&Final

OWNER OF U.S. REG. NOS. 653,151, 1,260,297 AND 1,260,298.

FOR SMALL DOMESTIC UTENSILS AND CONTAINERS, NAMELY, CUPS, SALT SHAKERS, SUGAR CANSISTERS, COFFEE CARAFES, OIL AND VINEGAR SWHAKERS, CHEESE SHAKERS, CHEESE GRATERS, SUGAR POURERS, SYRUP DISPENSERS, CREAMERS, BOWLS, PLATE, THERMAL INSULATED CONTAINERS FOR FOOD OR BEVERAGES, PAPER PLATES, PAPER TRAYS, SERVING PLATTERS, GRIDDLE SCREENS, NAPKIN DISPENSERS, SQUEEZE DISPENSERS, DISPOSABLE LATEX GLOVES FOR GENERAL USE, BROOMS, MOPS, DUST BINS OR PANS, SCOURING PADS AND SPONGES FOR HOUSEHOLD PURPOSES. (U.S. CLS. 2, 13, 23, 29, 30, 33, AND 50).

FIRST USE 0-0-1927; IN COMMERCE 0-0-1927.

SN 75-290,705. ESTEFAN ENTERPRISES, INC., MIAMI BEACH, FL. FILED 5-12-1997.



FOR COFFEE MUGS (U.S. CLS. 2, 13, 23, 29, 30, 33, 40 AND 50).

CLASS 21—(Continued).

SN 75-292,293. AMERICAN CUT CRYSTAL C[...] TION, HEWLETT, NY. FILED 5-15-1997.

## ACC

OWNER OF U.S. REG. NO. 1,152,452.

FOR CRYSTAL GLASSWARE. NAMELY, BOWLS, SANDWICH TRAYS, CANDY JARS AN[...] CANDY DISHES, SUGAR AND CREAMER SE[...] ING TRAYS, BUTTER DISHES, PITCHERS, DEC[...] ICE BUCKETS, COOLERS FOR CHAMPA[...] VOTIVE DISHES, NAPKIN RINGS, VAS[...] HOLDERS, BOXES, BEVERAGE WARE, BRA[...] TERS, CANDLE STICKS, CANDLE HOLDERS [...] NAPPIES, COASTER SETS, DISHES, PLATES, C[...] BOWLS FOR SERVING TRIFLE, CAKE PLAT[...] STANDS, RELISH DISHES, MARTINI PITCHER[...] ES AND STIRRERS SOLD AS A UNIT, BEVERA[...] RERS, BASKETS, CHIP AND DIP CONTAINE[...] AND PEPPER SHAKERS, JARS FOR BISCUIT[...] IES, JAMS, CONDIMENTS AND OIL AND V[...] BARWARE, NAMELY, BEER, HIGHBALL [...] PUNCH, SHOT, BRANDY, WINE AND CHA[...] GLASSES, MUGS AND GOBLETS, PERFUME B[...] SOLD EMPTY, PERFUME ATOMIZERS SOLD [...] FIGURINES, NAPKIN HOLDERS, HOUSEHOLD [...] SIL CADDIES, CUPS AND SAUCERS, KNIFE R[...] NAMENTAL BELLS, BASKETS, AND SOAP DIS[...] CLS. 2, 13, 23, 29, 30, 33, 40 AND 50).

FIRST USE 6-0-1971; IN COMMERCE 6-0-197[...]

SN 75-304,192. CALPHALON CORPORATION, T[...] OH. FILED 6-5-1997.

## CALPHALON COLOR[...]

OWNER OF U.S. REG. NOS. 1,096,804 AND 2,0[...] NO CLAIM IS MADE TO THE EXCLUSIVE R[...] USE "COLORS", APART FROM THE MARK AS [...] FOR COOKWARE, NAMELY, OMELETT[...] SAUTE PANS, SAUCE PANS, STIR FRY PAN[...] STEAMER INSERTS, SAUCIER PANS, STOCK [...] GRILL PANS, GRIDDLES, ROASTER PANS, RO[...] RACKS, LIDS AND SETS MADE UP OF THE F[...] ING ITEMS (U.S. CLS. 2, 13, 23, 29, 30, 40 A[...]

SN 75-326,732. PELCO INVESTMENTS, L.L.C., [...] OK. ASSIGNEE OF PARDUHN, A. PHILIP, [...] OH. FILED 7-18-1997.

## BACON BARN

NO CLAIM IS MADE TO THE EXCLUSIVE R[...] USE "BACON", APART FROM THE MARK AS [...] FOR COOKWARE, NAMELY, A MICROWAVE [...] COOKER (U.S. CLS. 2, 13, 23, 29, 30, 33, 40 AND [...]

[...] 1998  U.S. PAT[...]

(Continued).

[...]NEWO PLASTICS LTD [...]97.

## SUPER-GROO[...]

[...] NAMELY, PET COMBS [...]ND 50).

[...]2-1-1992; IN COMMERCE [...]E [...]

[...]DAVID C. COOK P[...] [...]INGS, AR. FILED 8-14-[...]

## DAYSPRIN[...]

[...] U.S. REG. NOS. 1,098,138 [...] [...]R CUPS AND MUGS (C [...]ARE, GLASS, PORCELA[...] [...]3, 29, 30, 33, 40 AND 50[...] [...]-0-1973; IN COMMERCE

[...]IMPACT PRODUCTS, [...] [...]-1997.

## CLEARVU EN[...]

[...] DISPENSERS (U.S. CLS. [...] [...]2-1-1997; IN COMMERC[...]

[...] HASTER GROVE, [...] [...]-1997.



HG[...] HASTER GROVE

[...], POTS AND POT HOL[...] [...] AND DECORATION; D[...] [...]OLDERS NOT OF PREC[...] [...]9, 30, 33, 40 AND 50). [...]2-18-1995; IN COMME[...]



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**

ASSISTANT COMMISSIONER FOR TRADEMARKS
2900 Crystal Drive
Arlington, Virginia 22202-3513

Jul 13, 1998

## NOTICE OF PUBLICATION UNDER 12(a)

1. Serial No.:
   75/290,702

2. Mark:
   BONGOS CUBAN CAFE
   and design

3. International Class(es):
   21

4. Publication Date:
   Aug 11, 1998

5. Applicant:
   Estefan Enterprises, Inc.

The mark of the application identified appears to be entitled to registration. The mark will, in accordance with Section 12(a) of the Trademark Act of 1946, as amended, be published in the Official Gazette on the date indicated above for the purpose of opposition by any person who believes he will be damaged by the registration of the mark. If no opposition is filed within the time specified by Section 13(a) of the Statute or by rules 2.101 or 2.102 of the Trademark Rules, the Commissioner of Patents and Trademarks may issue a notice of allowance pursuant to section 13(b) of the Statute.

Copies of the trademark portion of the Official Gazette containing the publication of the mark may be obtained at $38.00  each for domestic orders, or at $47.50 each for foreign orders from:

The Superintendent of Documents
U.S. Government Printing Office
PO Box 371954
Pittsburgh, PA  15250-7954
Phone: (202)512-1800

By direction of the Commissioner.

HOLLAND & KNIGHT
DOCKETED
Date: _07.17.98_
By: _____

TM 150        **OFFICIAL GAZETTE**        AUGUST 11, 1998

**CLASS 21—HOUSEWARES AND GLASS**

SN 75-200,480. RANGKAIAN HOTEL SERI MALAYSIA, 50480 KUALA LUMPUR, MALAYSIA. FILED 11-14-1996.



**SERI MALAYSIA**

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "MALAYSIA", APART FROM THE MARK AS SHOWN.

THE ENGLISH TRANSLATION OF "SERI" IS "GLOW, BRILLIANCE, RADIANCE AND SPLENDOR".

FOR BOTTLE OPENERS, BOTTLES SOLD EMPTY, SPORTS BOTTLES SOLD EMPTY, VACUUM BOTTLES, BROOMS, SCRUBBING BRUSHES, BUCKETS, BUTTER DISHES, BUTTER-DISH COVERS, CANDY DISHES NOT OF PRECIOUS METAL, CLEANING CLOTH, HAIR COMBS, COMB CASES FOR HAIR COMBS, ICE BUCKETS, COSMETIC BRUSHES, COSMETIC WIPES OF NON-WOVEN FABRIC, EGG CUPS, CUPS NOT OF PRECIOUS METAL, DECANTERS, DISH COVERS, UNFIXED METAL PAPER TOWEL DISPENSERS DUSTBINS, FURNITURE DUSTERS, FEATHER-DUSTERS, FLOWER POTS, PAPER PLATES, HAND-OPERATED PEPPER MILLS, POWDER PUFFS, RAGS FOR CLEANING, SHOE-BRUSHES, SOAP BOXES, SOAP DISPENSERS, SOAP DISHES, TABLE PLATES, SERVING TRAYS, TAN-KARDS AND TEAPOTS NOT OF PRECIOUS METAL, TOILET BRUSHES, SPONGES AND GLOVES USED FOR BATHING, SPONGES FOR HOUSEHOLD USE, DUSTING GLOVES, PLASTIC AND RUBBER GLOVES FOR HOUSE-HOLD USE, TOOTHBRUSHES, TOOTHPICKS, GLASS AND PORCELAIN WARE, NAMELY, GLASS AND PORCELAIN MUGS, PORCELAIN DISHES AND BOWLS, TISSUES OF PAPER AND NAPKINS OF PAPER FOR REMOVING MAKE-UP (U.S. CLS. 2, 13, 23, 29, 30, 33, 40 AND 50).

**CLASS 21—(Continued).**

SN 75-264,512. ESMALTACIONES SAN IGNACIO, S. A., 01006-VITORIA, SPAIN. FILED 3-26-1997.



OWNER OF SPAIN REG. NO. 1-741-948(4), DATED 11-5-1993, EXPIRES 11-5-2003.

THE ENGLISH TRANSLATION OF THE WORDING "SAN IGNAIO" IN THE MARK IS "ST. IGNATIUS".

FOR COOKWARE, NAMELY, POTS, PANS, COVERED AND UNCOVERED SKILLETS AND FRYPANS, SAUCE-PANS AND COVERED SAUCEPANS, DUTCH OVENS, COVERED AND OPEN ROASTERS, CASSEROLES FOR COOKING AND SOUP CASSEROLES, AND TEA KETTLES (U.S. CLS. 2, 13, 23, 29, 30, 33, 40 AND 50).

SN 75-267,751. NUTRAMAX PRODUCTS, INC., GLOUCESTER, MA. FILED 4-1-1997.

**SUPRA**

FOR TOOTHBRUSHES (U.S. CLS. 2, 13, 23, 29, 30, 33, 40 AND 50).

FIRST USE 12-20-1990; IN COMMERCE 12-20-1990.

SN 75-290,702. ESTEFAN ENTERPRISES, INC., MIAMI BEACH, FL. FILED 5-12-1997.



FOR COFFEE MUGS (U.S. CLS. 2, 13, 23, 29, 30, 33, 40 AND 50).

AUGUST 11, 1998

**CLASS 21—(Continued).**

SN 75-313,147. A & S REAL ES... SALEM, OR. FILED 6-23-1...

**AUTO-**

FOR GLOVES, LIQUID P... LATEX RUBBER FOR USE I... AND/OR GENERAL SERVI... (U.S. CLS. 2, 13, 23, 29, 30, 33, 4...

SN 75-324,409. ARCHITECTU... LOUISVILLE, KY. FILED 7-...

**PRISM...**

FOR BEVELED GLASS LA... PLATE GLASS FOR ARCHITE... 13, 23, 29, 30, 33, 40 AND 50).

FIRST USE 6-0-1996; IN COM...

SN 75-349,220. RED STEER G... 8-29-1997.



# Gre Gard

NO CLAIM IS MADE TO TH... USE "GARDENER", APART ... SHOWN.

FOR ALL PURPOSE MEN'S ... FOR GARDENING USE, NAM... VINYL COATED SYNTHETIC ... (U.S. CLS. 2, 13, 23, 29, 30, 40...

SN 75-351,498. NEWELL OPER... PORT, IL. FILED 9-4-1997.

**CHEF'S**

FOR COOKWARE, NAMEL... CLS. 2, 13, 23, 29, 30, 33, 40 AND...



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**

ASSISTANT COMMISSIONER FOR TRADEMARKS
2900 Crystal Drive
Arlington, Virginia 22202-3513

Jul 3, 1998

## NOTICE OF PUBLICATION UNDER 12(a)

1. Serial No.:
   75/290,708

2. Mark:
   BONGOS CUBAN CAFE
   and design

3. International Class(es):
   42

4. Publication Date:
   Aug 4, 1998

5. Applicant:
   Estefan Enterprises, Inc.

The mark of the application identified appears to be entitled to registration. The mark will, in accordance with Section 12(a) of the Trademark Act of 1946, as amended, be published in the Official Gazette on the date indicated above for the purpose of opposition by any person who believes he will be damaged by the registration of the mark. If no opposition is filed within the time specified by Section 13(a) of the Statute or by rules 2.101 or 2.102 of the Trademark Rules, the Commissioner of Patents and Trademarks may issue a notice of allowance pursuant to section 13(b) of the Statute.

Copies of the trademark portion of the Official Gazette containing the publication of the mark may be obtained at $38.00  each for domestic orders, or at $47.50 each for foreign orders from:

The Superintendent of Documents
U.S. Government Printing Office
PO Box 371954
Pittsburgh, PA  15250-7954
Phone: (202)512-1800

By direction of the Commissioner.

HOLLAND & KNIGHT
DOCKETED
Date: 07-09-98
By: _____



TM 278     OFFICIAL GAZETTE     AUGUST 4, 1998

**CLASS 42—(Continued).**

SN 75-285,891. EMSL ANALYTICAL, INC., WESTMONT, NJ. FILED 5-5-1997.



FOR PROVIDING ENVIRONMENTAL AND MATERIAL ANALYSIS AND ELECTRON MICROSCOPY ANALYSIS (U.S. CLS. 100 AND 101).
FIRST USE 6-1-1981; IN COMMERCE 12-1-1981.

SN 75-287,079. EVANS, JOHN W., SHARON, CT. FILED 5-6-1997.



FOR TECHNICAL CONSULTATION, PRODUCT RESEARCH AND DEVELOPMENT, AND ENGINEERING SERVICES IN THE AUTOMOTIVE INDUSTRY (U.S. CLS. 100 AND 101).
FIRST USE 5-19-1992; IN COMMERCE 5-19-1992.

SN 75-288,423. SHAKOPEE MDEWAKANTON SIOUX COMMUNITY, PRIOR LAKE, MN. FILED 5-8-1997.

## SHAKOPEE MDEWAKANTON SIOUX COMMUNITY

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "COMMUNITY", APART FROM THE MARK AS SHOWN.
SEC. 2(F) AS TO "SHAKOPEE MDEWAKANTON SIOUX".
FOR ASSOCIATION SERVICES, NAMELY, PROMOTING THE INTERESTS AND WELFARE OF THE LOCAL NATIVE AMERICAN COMMUNITY (U.S. CLS. 100 AND 101).
FIRST USE 11-28-1969; IN COMMERCE 11-28-1969.

**CLASS 42—(Continued).**

SN 75-289,619. ARIRANG HIBACHI STEAKHOUSE INC., STATEN ISLAND, NY. FILED 5-9-1997.

## ARIRANG HIBACHI STEAKHOUSE

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "HIBACHI STEAKHOUSE", APART FROM THE MARK AS SHOWN.
FOR RESTAURANT SERVICES (U.S. CLS. 100 AND 101).
FIRST USE 5-1-1993; IN COMMERCE 5-1-1993.

SN 75-290,610. SECURICOR SECURITY SERVICES LIMITED, SURREY SM1 4LD, UNITED KINGDOM. FILED 5-9-1997.

## SECURICOR

OWNER OF U.S. REG. NO. 1,856,179.
FOR PRISON SERVICES, NAMELY, DETENTION AND REHABILITATION OF CRIMINAL OFFENDERS AND CORRECTIONAL SERVICES FOR CRIMINAL OFFENDERS, PROVISION OF SERVICES FOR THE ELECTRONIC MONITORING OF CRIMINAL OFFENDERS, PROVISION OF SECURED ACCOMMODATION FOR JUVENILES AND ILLEGAL IMMIGRANTS, PROVISION OF REMAND CENTERS; SECURITY PATROL AND SECURITY GUARD SERVICES; ALARM AND ELECTRONIC SURVEILLANCE MONITORING SERVICES; AND CONSULTATION SERVICES IN THE FIELD OF SECURITY, COMPUTERS, INFORMATION TECHNOLOGY, AND CORRECTIONAL FACILITIES (U.S. CLS. 100 AND 101).

SN 75-290,708. ESTEFAN ENTERPRISES, INC., MIAMI BEACH, FL. FILED 5-12-1997.



OWNER OF U.S. REG. NO. 1,257,050.
NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "CUBAN CAFE", APART FROM THE MARK AS SHOWN.
THE MARK IS LINED FOR THE COLORS RED, YELLOW AND GREEN.
FOR RESTAURANT AND BAR SERVICES (U.S. CLS. 100 AND 101).

AUGUST 4, 1998

**CLASS 42—(Continued).**

SN 75-291,581. TECHNO... AL, INC., TAMPA, FL...

## UNI...

FOR COMPUTER SER... AN ON-LINE INTERAC... TAINING A VIRTUAL ... FEATURES A VARIETY ... OTHERS (U.S. CLS. 100 A...

SN 75-292,611. JORDAN-T... AL RESOURCES, ANAH...

## INDUSTRIA...

NO CLAIM IS MADE TO ... USE "INDUSTRIAL", AP... SHOWN.
FOR RENTAL AND ... EQUIPMENT FOR TE... NAMELY, FOR TESTING ... PARTS AND COMPONE... PROCESSING INSTRUMEN... ABILITY OF OBJECTS ... COLD ENVIRONMENTS, ... TESTING VOICE AND DA... WORKS, FOR MEASURIN... CHARACTERISTICS OF CO... URING THERMAL OUTPU... FACES, FOR MEASUR... FIELDS, AND FOR MEASU... TRIC CURRENT, VOLTA... AND FREQUENCIES (U.S. C...
FIRST USE 0-0-1981; IN CO...

SN 75-293,896. ELECTRIC JU... BRITISH COLUMBIA, CAN...

## ELECTRIC J...

PRIORITY CLAIMED UND... APPLICATION NO. 829462, F... 486999, DATED 12-15-1997, EX... NO CLAIM IS MADE TO T... USE "JUICE BAR", APART... SHOWN.
FOR OPERATION OF A JU... OF A SNACK FOOD RESTAU... 101).



UNITED STATES  DEPARTMENT OF COMMERCE
Patent and Trademark Office

ASSISTANT COMMISSIONER FOR TRADEMARKS
2900 Crystal Drive
Arlington, Virginia 22202-3513

Jun 25, 1998

## NOTICE OF PUBLICATION UNDER 12(a)

1. Serial No.:
   75/290,706

2. Mark:
   BONGOS CUBAN CAFE
   and design

3. International Class(es):
   42

4. Publication Date:
   Jul 29, 1998

5. Applicant:
   Estefan Enterprises, Inc.

The mark of the application identified appears to be entitled to registration. The mark will, in accordance with Section 12(a) of the Trademark Act of 1946, as amended, be published in the Official Gazette on the date indicated above for the purpose of opposition by any person who believes he will be damaged by the registration of the mark. If no opposition is filed within the time specified by Section 13(a) of the Statute or by rules 2.101 or 2.102 of the Trademark Rules, the Commissioner of Patents and Trademarks may issue a notice of allowance pursuant to section 13(b) of the Statute.

Copies of the trademark portion of the Official Gazette containing the publication of the mark may be obtained at $38.00   each for domestic orders, or at $47.50 each for foreign orders from:

The Superintendent of Documents
U.S. Government Printing Office
PO Box 371954
Pittsburgh, PA  15250-7954
Phone: (202)512-1800

By direction of the Commissioner.

HOLLAND & KNIGHT
DOCKETED
Date: 7.02.98

CLASS 42—(Continued).

CLASS 42—(Continued).

SN 75-288,158. METROPOLITAN PIER AND EXPOSITION AUTHORITY, CHICAGO, IL. FILED 5-7-1997.

SN 75-290,701. ESTEFAN ENTERPRISES, INC., MIAMI BEACH, FL. FILED 5-12-1997.





NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "CENTER", APART FROM THE MARK AS SHOWN.

FOR PROVIDING CONVENTION FACILITIES (U.S. CLS. 100 AND 101).

FIRST USE 10-0-1996; IN COMMERCE 10-0-1996.

OWNER OF U.S. REG. NO. 1,257,050.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "CUBAN CAFE", APART FROM THE MARK AS SHOWN.

FOR RESTAURANT AND BAR SERVICES (U.S. CLS. 100 AND 101).

---

SN 75-288,850. BUERGER MEDIA & MARKETING, INC., NORCROSS, GA. FILED 5-8-1997.

SN 75-290,706. ESTEFAN ENTERPRISES, INC., MIAMI BEACH, FL. FILED 5-12-1997.





NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "PUBLICITY AND MARKETING FOR INFORMATION TECHNOLOGY", APART FROM THE MARK AS SHOWN.

FOR COMPUTER SERVICES, NAMELY, PROVIDING AN ON-LINE MAGAZINE PROVIDED VIA A GLOBAL COMPUTER NETWORK FEATURING ARTICLES ON INFORMATION TECHNOLOGY AND PUBLIC RELATIONS AND MARKETING FOR INFORMATION TECHNOLOGY PRODUCTS, SERVICES AND ORGANIZATIONS (U.S. CLS. 100 AND 101).

FIRST USE 4-15-1997; IN COMMERCE 4-15-1997.

OWNER OF U.S. REG. NO. 1,257,050.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "CUBAN CAFE", APART FROM THE MARK AS SHOWN.

THE MARK IS LINED FOR THE COLORS RED, YELLOW AND GREEN.

FOR RESTAURANT AND BAR SERVICES (U.S. CLS. 100 AND 101).



**UNITED STATES ┌─┐ARTMENT OF COMMERCE**
**Patent and Trade...─k Office**

ASSISTANT COMMISSIONER FOR TRADEMARKS
2900 Crystal Drive
Arlington, Virginia 22202-3513

Jun 26, 1998

## NOTICE OF PUBLICATION UNDER 12(a)

1. Serial No.:
   75/290,712

2. Mark:
   BONGOS CUBAN CAFE
   and design

3. International Class(es):
   42

4. Publication Date:
   Jui 28, 1998

5. Applicant:
   Estefan Enterprises, Inc.

The mark of the application identified appears to be entitled to registration. The mark will, in accordance with Section 12(a) of the Trademark Act of 1946, as amended, be published in the Official Gazette on the date indicated above for the purpose of opposition by any person who believes he will be damaged by the registration of the mark. If no opposition is filed within the time specified by Section 13(a) of the Statute or by rules 2.101 or 2.102 of the Trademark Rules, the Commissioner of Patents and Trademarks may issue a notice of allowance pursuant to section 13(b) of the Statute.

Copies of the trademark portion of the Official Gazette containing the publication of the mark may be obtained at $38.00  each for domestic orders, or at $47.50 each for foreign orders from:

The Superintendent of Documents
U.S. Government Printing Office
PO Box 371954
Pittsburgh, PA  15250-7954
Phone: (202)512-1800

By direction of the Commissioner.

HOLLA... & ...iGHT
D...CKE...
Date: 07-02.98



**CLASS 42—(Continued).**

SN 75-290,712. ESTEFAN ENTERPRISES, INC., MIAMI BEACH, FL. FILED 5-12-1997.



OWNER OF U.S. REG. NO. 1,257,050.
NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "CUBAN CAFE", APART FROM THE MARK AS SHOWN.
FOR RESTAURANT AND BAR SERVICES (U.S. CLS. 100 AND 101).

———————

SN 75-292,330. BEHAVIORAL MEDICINE ASSOCIATES, INC., BEVERLY HILLS, CA. FILED 5-15-1997.

# LifeMAX

OWNER OF U.S. REG. NO. 1,550,579.
FOR PROVIDING HEALTHCARE SERVICES, PROVIDING ON-LINE INFORMATION IN THE FIELD OF HEALTHCARE MATTERS (U.S. CLS. 100 AND 101).
FIRST USE 4-25-1997; IN COMMERCE 4-25-1997.

———————

SN 75-292,405. EVOLVING SYSTEMS, INC., ENGLEWOOD, CO. FILED 5-15-1997.

# EVOLVING SYSTEMS

OWNER OF U.S. REG. NO. 1,836,474.
NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "SYSTEMS", APART FROM THE MARK AS SHOWN.
FOR TECHNICAL CONSULTATION IN THE FIELD OF COMPUTER SOFTWARE AND COMPUTER SOFTWARE DEVELOPMENT FOR OTHERS (U.S. CLS. 100 AND 101).
FIRST USE 6-0-1985; IN COMMERCE 9-18-1985.

**CLASS 42—(Continued).**

SN 75-296,367. RTD, INC., MANASSAS, VA. FILED 5-5-1997.



NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "BARBER SHOP" AND THE PICTORIAL REPRESENTATION OF A BARBER POLE, APART FROM THE MARK AS SHOWN.
FOR HAIR CUTTING AND HAIR SALON SERVICES (U.S. CLS. 100 AND 101).
FIRST USE 1-1-1988; IN COMMERCE 1-1-1988.

———————

SN 75-296,871. BOSTON RESTAURANT ASSOCIATES, INC., SAUGUS, MA. FILED 5-5-1997.

# PIZZERIA REGINA OF THE NORTH END

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "PIZZERIA" AND "OF THE NORTH END", APART FROM THE MARK AS SHOWN.
FOR RESTAURANT SERVICES (U.S. CLS. 100 AND 101).
FIRST USE 5-0-1976; IN COMMERCE 4-25-1997.

———————

SN 75-297,378. DOWNTOWN NASHVILLE BAR, L.P., LOUISVILLE, KY. FILED 5-23-1997.

# THE BEER SELLAR

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "BEER", "SELLER", AND/OR "CELLAR", APART FROM THE MARK AS SHOWN.
FOR BAR AND RESTAURANT SERVICES (U.S. CLS. 100 AND 101).
FIRST USE 10-24-1996; IN COMMERCE 10-24-1996.





**UNITED STATE. JE. .RTMENT OF COMMERCE**
**Patent and Trademark Office**

ASSISTANT COMMISSIONER FOR TRADEMARKS
2900 Crystal Drive
Arlington, Virginia 22202-3513

Jun 26, 1998

NOTICE OF PUBLICATION UNDER 12(a)

1. Serial No.:
   75/290,701

2. Mark:
   BONGOS CUBAN CAFE
   and design

3. International Class(es):
   42

4. Publication Date:
   Jul 28, 1998

5. Applicant:
   Estefan Enterprises, Inc.

The mark of the application identified appears to be entitled to registration. The mark will, in accordance with Section 12(a) of the Trademark Act of 1946, as amended, be published in the Official Gazette on the date indicated above for the purpose of opposition by any person who believes he will be damaged by the registration of the mark.  If no opposition is filed within the time specified by Section 13(a) of the Statute or by rules 2.101 or 2.102 of the Trademark Rules, the Commissioner of Patents and Trademarks may issue a notice of allowance pursuant to section 13(b) of the Statute.

Copies of the trademark portion of the Official Gazette containing the publication of the mark may be obtained at $38.00  each for domestic orders, or at $47.50 each for foreign orders from:

The Superintendent of Documents
U.S. Government Printing Office
PO Box 371954
Pittsburgh, PA  15250-7954
Phone: (202)512-1800

By direction of the Commissioner.

HOLLAND & KNIGHT
DOCKETED
Date: 07.02.98
By:

JULY 28, 19

ed).

RN ILLINOIS HOME HEALT
TH, IL. FILED 5-7-1997.



RVICES PROVIDED TO PA-
S. CLS. 100 AND 101).
OMMERCE 0-0-1984.

———

N PIER AND EXPOSITION
FILED 5-7-1997.



PLACE

N FACILITIES (U.S.
RCE 10-0-1996.

---

JULY 28, 1998      **U.S. PATENT AND TRADEMARK OFFICE**      TM 651

CLASS 42—(Continued).

SN 75-255,158. METROPOLITAN PIER AND EXPOSITION AUTHORITY, CHICAGO, IL. FILED 5-7-1997.



NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "CENTER", APART FROM THE MARK AS SHOWN.
FOR PROVIDING CONVENTION FACILITIES (U.S. CLS. 100 AND 101).
FIRST USE 10-0-1996; IN COMMERCE 10-0-1996.

———

SN 75-288,350. BUERGER MEDIA & MARKETING, INC., NORCROSS, GA. FILED 5-8-1997.



NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "PUBLICITY AND MARKETING FOR INFORMA- TION TECHNOLOGY", APART FROM THE MARK AS SHOWN.
FOR COMPUTER SERVICES, NAMELY, PROVIDING AN ON-LINE MAGAZINE PROVIDED VIA A GLOBAL COMPUTER NETWORK FEATURING ARTICLES ON IN- FORMATION TECHNOLOGY AND PUBLIC RELATIONS AND MARKETING FOR INFORMATION TECHNOLOGY PRODUCTS, SERVICES AND ORGANIZATIONS (U.S. CLS. 100 AND 101).
FIRST USE 4-15-1997; IN COMMERCE 4-15-1997.

---

CLASS 42—(Continued).

SN 75-290,701. ESTEFAN ENTERPRISES, INC., MIAMI BEACH, FL. FILED 5-12-1997.



OWNER OF U.S. REG. NO. 1,257,050.
NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "CUBAN CAFE", APART FROM THE MARK AS SHOWN.
FOR RESTAURANT AND BAR SERVICES (U.S. CLS. 100 AND 101).

———

SN 75-290,706. ESTEFAN ENTERPRISES, INC., MIAMI BEACH, FL. FILED 5-12-1997.



OWNER OF U.S. REG. NO. 1,257,050.
NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "CUBAN CAFE", APART FROM THE MARK AS SHOWN.
THE MARK IS LINED FOR THE COLORS RED, YELLOW AND GREEN.
FOR RESTAURANT AND BAR SERVICES (U.S. CLS. 100 AND 101).

# UNITED STATES DEPARTMENT OF COMMERCE
## Patent and Trademark Office

| SERIAL NO. | APPLICANT | PAPER NO. |
|---|---|---|
| 75/355548 Estefan Enterprises, Inc. | | |

**MARK**

BONGOS CUBAN CAFE AND DESIGN

| ADDRESS | | |
|---|---|---|
| LESLIE S SPITALNEY<br>HOLLAND & KNIGHT LLP<br>2100 PENNSYLVANIA AVE NW STE 400<br>WASHINGTON DC 20037 | **ACTION NO.**<br>02 | **ADDRESS:**<br>Assistant Commissioner<br>for Trademarks<br>2900 Crystal Drive<br>Arlington, VA 22202-3513 |
| | **MAILING DATE**<br>06/10/98 | |
| | **REF. NO.** | no fees are enclosed, the address should include the words "Box Responses - No Fee." |

FORM PTO-1525 (5-90)          U.S. DEPT. OF COMM. PAT. & TM OFFICE

Please provide in all correspondence:

1. Filing Date, serial number, mark and Applicant's name.
2. Mailing date of this Office action.
3. Examining Attorney's name and Law Office number.
4. Your telephone number and ZIP code.

TRADEMARK LAW OFFICE 107
Serial Number: 75/355548
Mark: BONGOS CUBAN CAFE & DESIGN
        **Please Place on Upper Right Corner**
        **of Response to Office Action ONLY **

*For your convenience and to ensure proper handling of your response, a label has been enclosed. Please attach it to the upper right corner of your response. If the label is not enclosed, print or type the Trademark Law Office No., Serial No., and Mark in the upper right corner of your response.*

RE: Serial Number: 75/355548

This letter responds to the applicant's communication filed on May 14, 1998.

## APPLICATION SUSPENDED

This application is hereby **SUSPENDED** pending the disposition of Civil Action No. 97-2993-CIV-KING. Upon termination of the proceeding, the applicant, if a party thereto, should advise the examining attorney of the outcome. The order in regard to the motion for preliminary injunction is not a final determination of the litigation between applicant and registrant.

This application is hereby **SUSPENDED** pending the disposition of Application Serial No. 75-128703. Since the applicant's effective filing date is subsequent to the effective filing date of the above-identified application, the latter, when it registers, may be cited against this application. See 37 C.F.R. §2.83.

## REFUSAL UNDER TRADEMARK ACT SECTION 2(d) CONTINUED

The refusal under Trademark Act Section 2(d) is continued as to cited registrations 1974123, 1895168, 1898168, 1500609, and 1331004.

HOLLAND & KNIGHT
DOCKETED
Date: 6/12/98
By:

75/355548                              -2-

All remaining previously raised issues are resolved.

**STATUS LINE:** (703) 305-8747

Cheryl A. Butler
Examining Attorney
Law Office 107
(703) 308-9107 X165

# UNITED STATES DEPARTMENT OF COMMERCE
## Patent and Trademark Office

| SERIAL NO.          APPLICANT | | PAPER NO. |
|---|---|---|
| 75/355549 Estefan Enterprises, Inc. | | |
| **MARK** | | |
| BONGOS CUBAN CAFE AND DESIGN | | |
| **ADDRESS** LESLIE S SPITALNEY HOLLAND & KNIGHT LLP 2100 PENNSYLVANIA AVE NW STE 400 WASHINGTON DC 20037 | **ACTION NO.** 02 | **ADDRESS:** Assistant Commissioner for Trademarks 2900 Crystal Drive Arlington, VA 22202-3513 |
| | **MAILING DATE** 06/12/98 | If no fees are enclosed, the address should include the words "Box Responses - No Fee." |
| | **REF. NO.** | |
| **FORM PTO-1525 (5-90)**    U.S. DEPT. OF COMM. PAT. & TM OFFICE | | Please provide in all correspondence: |

TRADEMARK LAW OFFICE 107
Serial Number:  75/355549
Mark:  BONGOS CUBAN CAFE & DESIGN
       **Please Place on Upper Right Corner**
       **of Response to Office Action ONLY **

1. Filing Date, serial number, mark and Applicant's name.
2. Mailing date of this Office action.
3. Examining Attorney's name and Law Office number.
4. Your telephone number and ZIP code.

*For your convenience and to ensure proper handling of your response, a label has been enclosed. Please attach it to the upper right corner of your response. If the label is not enclosed, print or type the Trademark Law Office No., Serial No., and Mark in the upper right corner of your response.*

RE: Serial Number: 75/355549

This letter responds to the applicant's communication filed on May 14, 1998.

## APPLICATION SUSPENDED

This application is hereby **SUSPENDED** pending the disposition of Civil Action No. 97-2993-CIV-KING. Upon termination of the proceeding, the applicant, if a party thereto, should advise the examining attorney of the outcome. The order in regard to the motion for preliminary injunction is not a final determination of the litigation between applicant and registrant.

This application is hereby **SUSPENDED** pending the disposition of Application Serial No. 75-128703. Since the applicant's effective filing date is subsequent to the effective filing date of the above-identified application, the latter, when it registers, may be cited against this application. See 37 C.F.R. §2.83.

## REFUSAL UNDER TRADEMARK ACT SECTION 2(d) CONTINUED

The refusal under Trademark Act Section 2(d) is continued as to cited registrations 1974123, 1895168, 1898168, 1500609, and 1331004.

HOLLAND & KNIGHT
DOCKETED
Date: 6-17-98
By:

75/355549                                      -2-

## REQUIREMENT FOR A LINING STATEMENT CONTINUED

The requirement that applicant provide a lining statement is continued.   37 C.F.R. Section 2.35; TMEP Section 807.06(d).

The lining shown in the drawing appears to be a feature of the mark.  Applicant must so indicate.

All remaining previously raised issues are resolved.

**STATUS LINE:** (703) 305-8747

Cheryl A. Butler
Examining Attorney
Law Office 107
(703) 308-9107 X165

# UNITED STATES DEPARTMENT OF COMMERCE
## Patent and Trademark Office

| | | PAPER NO. |
|---|---|---|
| **SERIAL NO.**      **APPLICANT**<br>75/355547 Estefan Enterprises, Inc.<br><br>**MARK**<br>BONGOS CUBAN CAFE AND DESIGN<br>**ADDRESS**<br>LESLIE S SPITALNEY<br>HOLLAND & KNIGHT LLP<br>2100 PENNSYLVANIA AVE NW STE 400<br>WASHINGTON DC  20037 | **ACTION NO.**<br>02<br><br>**MAILING DATE**<br>06/12/98<br><br>**REF. NO.** | **ADDRESS:**<br>Assistant Commissioner<br>for Trademarks<br>2900 Crystal Drive<br>Arlington, VA 22202-3513<br><br>If no fees are enclosed, the address should include the words "Box Responses - No Fee." |
| **FORM PTO-1525 (5-90)**   U.S. DEPT. OF COMM. PAT. & TM OFFICE | 20366.30 | Please provide in all correspondence:<br>1. Filing Date, serial number, mark and Applicant's name.<br>2. Mailing date of this Office action.<br>3. Examining Attorney's name and Law Office number.<br>4. Your telephone number and ZIP code. |

```
TRADEMARK LAW OFFICE 107
Serial Number: 75/355547
Mark:  BONGOS CUBAN CAFE & DESIGN
       **Please Place on Upper Right Corner**
       **of Response to Office Action ONLY **
```

*For your convenience and to ensure proper handling of your response, a label has been enclosed. Please attach it to the upper right corner of your response. If the label is not enclosed, print or type the Trademark Law Office No., Serial No., and Mark in the upper right corner of your response.*

RE: Serial Number: 75/355547

This letter responds to the applicant's communication filed on May 14, 1998.

## APPLICATION SUSPENDED

This application is hereby **SUSPENDED** pending the disposition of Civil Action No. 97-2993-CIV-KING. Upon termination of the proceeding, the applicant, if a party thereto, should advise the examining attorney of the outcome. The order in regard to the motion for preliminary injunction is not a final determination of the litigation between applicant and registrant.

This application is hereby **SUSPENDED** pending the disposition of Application Serial No. 75-128703. Since the applicant's effective filing date is subsequent to the effective filing date of the above-identified application, the latter, when it registers, may be cited against this application. See 37 C.F.R. §2.83.

## REFUSAL UNDER TRADEMARK ACT SECTION 2(d) CONTINUED

The refusal under Trademark Act Section 2(d) is continued as to cited registrations 1974123, 1895168, 1898168, 1500609, and 1331004.

HOLLAND & KNIGHT
DOCKETED
Date: 6.17.98
By:

75/355547                                -2-

All remaining previously raised issues are resolved.

**STATUS LINE:** (703) 305-8747

*Cheryl Butler*

Cheryl A. Butler
Examining Attorney
Law Office 107
(703) 308-9107 X165

# UNITED STATES DEPARTMENT OF COMMERCE
## Patent and Trademark Office

| SERIAL NO. | APPLICANT | PAPER NO. |
|---|---|---|
| 75/290707 Estefan Enterprises, Inc. | | |

**MARK**

BONGOS CUBAN CAFE AND DESIGN

| ADDRESS | | ACTION NO. |
|---|---|---|
| LESLIE S SPITALNEY | | 02 |
| HOLLAND & KNIGHT LLP | | |
| 2100 PENNSYLVANIA AVE NW STE 400 | | **MAILING DATE** |
| WASHINGTON DC  20037 | | 05/21/98 |
| | | **REF. NO.** |

**ADDRESS:**
Assistant Commissioner
for Trademarks
2900 Crystal Drive
Arlington, VA 22202-3513

If no fees are enclosed, the address should include the words "Box Responses - No Fee."

| FORM PTO-1525 (5-90) | U.S. DEPT. OF COMM. PAT. & TM OFFICE | 20366.30 |
|---|---|---|

Please provide in all correspondence:
1. Filing Date, serial number, mark and applicant's name.
2. Mailing date of this Office action.
3. Examining Attorney's name and Law Office number.
4. Your telephone number and ZIP code.

TRADEMARK LAW OFFICE 107
Serial Number: 75/290707
Mark:  BONGOS CUBAN CAFE & DESIGN
       **Please Place on Upper Right Corner**
       **of Response to Office Action ONLY **

This letter responds to the applicant's communication filed on April 16, 1998.

## APPLICATION SUSPENDED

This application is hereby **SUSPENDED** pending the disposition of Civil Action No. 97-2993-CIV-KING.  Upon termination of the proceeding, the applicant, if a party thereto, should advise the examining attorney of the outcome.  The order in regard to the motion for preliminary injunction is not a final determination of the litigation between applicant and registrant.

This application is also hereby **SUSPENDED** pending the disposition of Application Serial No. 75-128703.  Since the applicant's effective filing date is subsequent to the effective filing date of the above-identified application, the latter, when it registers, may be cited against this application. See 37 C.F.R. §2.83.

## REFUSAL UNDER TRADEMARK ACT SECTION 2(d) CONTINUED

The refusal to register under Trademark Act Section 2(d) is continued as to cited U.S. registrations 1974123, 1895168, 1898168, 1500609, and 1331004.

HOLLAND & KNIGHT
DOCKETED
Date: 5-27-98
DS

75/290707                                    -2-

## LINING STATEMENT

The requirement for a lining statement is continued.

All remaining previously raised issues are resolved.

**STATUS LINE:** (703) 305-8747

Cheryl A. Butler
Examining Attorney
Law Office 107
(703) 308-9107 X165

# UNITED STATES DEPARTMENT OF COMMERCE
## Patent and Trademark Office

| SERIAL NO. | APPLICANT | PAPER NO. |
|---|---|---|
| 75/290704 Estefan Enterprises, Inc. | | |

**MARK**

BONGOS CUBAN CAFE AND DESIGN

| ADDRESS | ACTION NO. | ADDRESS: |
|---|---|---|
| LESLIE S SPITALNEY | 02 | Assistant Commissioner for Trademarks 2900 Crystal Drive Arlington, VA 22202-3513 |
| HOLLAND & KNIGHT LLP | | |
| 2100 PENNSYLVANIA AVE NW STE 400 | **MAILING DATE** | If no fees are enclosed, the address should include the words "Box Responses - No Fee." |
| WASHINGTON DC 20037 | 05/21/98 | |
| | **REF. NO.** | |

| FORM PTO-1525 (5-90) | U.S. DEPT. OF COMM. PAT. & TM OFFICE | 20366.30 |
|---|---|---|

Please provide in all correspondence:
...Date, serial number, mark and
...cant's name.
...ng date of this Office action.
...ming Attorney's name and
...Office number.
...telephone number and ZIP code.

```
TRADEMARK LAW OFFICE 107
Serial Number: 75/290704
Mark:  BONGOS CUBAN CAFE & DESIGN
       **Please Place on Upper Right Corner**
       **of Response to Office Action ONLY **
```

*For your convenience and to ensure proper handling of your response, a label has been enclosed. Please attach it to the upper right corner of the response. If the label is not enclosed, print or type the Trademark Law Office No. ........... in the upper right corner of your response.*

**RE: Serial Number: 75/290704**

This letter responds to the applicant's communication filed on April 16, 1998.

### APPLICATION SUSPENDED

This application is hereby **SUSPENDED** pending the disposition of Civil Action No. 97-2993 CIV-KING. Upon termination of the proceeding, the applicant, if a party thereto, should advise the examining attorney of the outcome. The order in regard to the motion for preliminary injunction is not a final determination of the litigation between applicant and registrant.

This application is also hereby **SUSPENDED** pending the disposition of Application Serial No. 75-128703. Since the applicant's effective filing date is subsequent to the effective filing date of the above-identified application, the latter, when it registers, may be cited against this application. See 37 C.F.R. §2.83.

HOLLAND & KNIGHT
DOCKETED
Date: 5-27-98
By:

75/290704                                    -2-

## REFUSAL UNDER TRADEMARK ACT SECTION 2(d) CONTINUED

The refusal to register under Trademark Act Section 2(d) is continued as to cited U.S. registrations 1974123, 1895168, 1898168, 1500609, and 1331004.

All remaining previously raised issues are resolved.

**STATUS LINE:** (703) 305-8747

Cheryl A. Butler
Examining Attorney
Law Office 107
(703) 308-9107 X165

*Case 97cv 2993*

# BRAND PERCEPTIONS STUDY:

# THE VOICE OF THE CUSTOMER

Conducted For:

## BONGOS CUBAN CAFE

by:

## DR. DAN SAREL

January 5, 1998

**Dr. Dan Sarel**
**Marketing Research, Consultation, Strategic Planning**
**10100 S.W. 142nd Street**
**Miami, Florida 33176**



EXHIBIT

Sarel #4

NMG 1-7-98

## TABLE OF CONTENT

1. Executive summary

2. Objectives and methodology

3. Key findings and analysis

4. Statistical distribution

   Appendix: survey instrument

# 1. EXECUTIVE SUMMARY

Dr. Dan Sarel is an independent marketing consultant and a marketing professor at the University of Miami School of Business. Dr. Sarel was commissioned to conduct a marketing survey of BONGOS CUBAN CAFE customers. The objective of the study is to assess whether customers of BONGOS CUBAN CAFE are associating or seeing a connection between BONGOS CUBAN CAFE and plaintiff's brand. A market study was designed and implemented to meet the stated objectives.

Customers for this study were defined as people (not associated with plaintiff or defendant) visiting BONGOS CUBAN CAFE restaurant and/or gift shop. A 384 respondent sample was recruited and interviewed between 12/27/97 - 12/29/97 at BONGOS CUBAN CAFE restaurant and gift shop following established market research procedures. Interviews were conducted by a professional market research firm. None of the interviewers, supervisors or the person coding the surveys had any knowledge of the purpose of the study. The questionnaire used in the study was developed by Dr. Sarel. It is based on a now-standard survey format recommended by McCarthy. The format provides respondents multiple opportunities to indicate any association and/or relation between BONGOS CUBAN CAFE and the plaintiff's brand and products.

Based on all the data available, we can clearly conclude that no evidence of ownership by plaintiff, association with plaintiff or plaintiff's products, or any relations between BONGOS CUBAN CAFE and plaintiff, was found in this study. None of the participants in this study has mentioned plaintiff or plaintiff's products. It is very clear that these participants are not thinking about the plaintiff or its products in the context of the BONGOS CUBAN CAFE experience. Given the strength of these findings, i.e. that NO ONE mentioned plaintiff or its products, confusion between the two brands at the BONGOS CUBAN CAFE location is extremely unlikely. For all practical purposes we can state that customers of BONGOS CUBAN CAFE, as represented in this study, are not thinking about a relationship, an association, sponsorship or similarity between plaintiff's brand and BONGOS CUBAN CAFE.

2

## 2. OBJECTIVES AND METHODOLOGY

### Objectives

BONGOS CUBAN CAFE has commissioned Dr. Dan Sarel an independent marketing consultant and a marketing professor at the University of Miami School of Business, to conduct a marketing survey of its customers. The purpose of the study is to determine the likelihood of confusion between BONGOS CUBAN CAFE and the plaintiff's Bongo brand. Specifically, the objective of the study is to assess whether customers of BONGOS CUBAN CAFE are associating or seeing a connection between BONGOS CUBAN CAFE and plaintiff's brand. If an association would be found, it would indicate for customers of BONGOS CUBAN CAFE, their likelihood of confusion between the two brands.

### Methodology

To determine the likelihood of confusion a survey methodology was employed. The universe for the study was defined as customers of BONGOS CUBAN CAFE. More specifically, customers are defined as people (not associated with plaintiff or defendant) visiting BONGOS CUBAN CAFE restaurant and/or gift shop. To ensure that only customers of BONGOS CUBAN CAFE are included in the study, the survey was conducted on the BONGOS CUBAN CAFE premises. Every person that was selected met the definition of a customer.

The survey instrument was developed by Dr. Sarel following established marketing research practices. The questionnaire was based on a now-standard survey format recommended by McCarthy. The format provides respondents multiple opportunities to indicate any association and/or relation between BONGOS CUBAN CAFE and the plaintiff's brand and products. A copy of the survey instrument is included in the appendix.

To administer the survey, an independent marketing research firm was hired. The firm based in the Orlando area is Barbara Nolan Market Research. The firm has been in business for approximately 25 years and is regularly employed by many well known corporations. A supervisor was assigned to manage this process. No one at Barbara Nolan Market Research was informed about the purpose of this study. Interviewers were selected for the job by the supervisor. All interviewers were experienced in conducting intercept interviews. Interviewers did not know the purpose of the study and were not associated in any way with the sponsors of the study. Interviewers were instructed on how to conduct the study and were trained prior to executing the study. All instructions were developed by Dr. Sarel. Training for the interviewers was provided by the supervisor.

The sample was implemented following established procedures. Personal interviews were conducted during a three day period (12/27/97 - 12/29/97). During this period, interviewers were

3

positioned inside BONGOS CUBAN CAFE from twelve noon till approximately 8:30 p.m. each day. Interviewers were instructed to interview customers in the following order: a) immediately after finishing eating or shopping in the gift shop; b) while waiting inside restaurant before they are seated. The specific selection of respondents was random. Interviewers were told to follow these procedures:

1. Approach the first person available in the location stated above
2. If you approach adults, alternate between males and female respondents
3. If you approach parties that include teenaged kids (over 13 years old), alternate between adults and teenaged kids. Among teenaged kids alternate between males and females.
4. Approximately 90% of the time should be allocated to interviews at the  restaurant, 10% (with a minimum of 50 surveys) for interviews at the gift shop.

    The completed questionnaires were returned to Dr. sarel for coding and analysis. After reviewing the questionnaires, Dr. sarel developed a coding scheme. All open-ended questions were coded by Dr. Sarel's assistant. She had no knowledge about the purpose or goals of the study. Few unclear coding cases were discussed between Dr. Sarel and his assistant. In all cases there was a complete agreement on the final classifications. None of these cases involved any element even remotely connected to the plaintiff. The data were entered into a computer and analyzed by Dr. Sarel using the SPSS computer programs.

    The following report is based on the data collected and analyzed using the procedures described above. The next section called 'key findings and analysis' describes the key findings in an essay and tabular format. A complete statistical distribution of all data is provided in the section following the key finding section.

4

## 3. KEY FINDINGS AND ANALYSIS

### Sample Composition

The composition of respondents participating in this survey is described in Table 1. The sample consisted of 384 participants who were randomly selected during the interviewing period. The sample included a broad mix of respondents meeting the sampling objectives of the study. The sample was about equally divided between females and males. A wide range of age groups are represented. About one third of respondents are under 30 years old, and about 1/6 are teenagers. Approximately 3/4 of respondents were visitors to the Orlando area and about 1/4 were local residents. The large majority of respondents were first time visitors to BONGOS CUBAN CAFE (82.6%).

To ensure a full representation of the BONGOS CUBAN CAFE experience, respondents were interviewed at the restaurant as well as at the gift shop. Table 1 indicates that 85.9% of the participants were interviewed at the restaurant and 14.1% at the gift shop. This distribution provides sufficient representation to conduct an analysis of the gift shop experience. Please note that respondents interviewed at the gift shop could have also experienced the restaurant and vice a versa. In fact, Table 1 reports that 95.8% of all respondents visited the restaurant, and 49.2% visited (saw) the gift shop. In other words, the study indicates that only a very small number of visitors see the gift shop without seeing the restaurant (in this sample, less than 5%).

In conclusion, the sample provides a good representation of BONGOS CUBAN CAFE's customers during the interviewing period. It provides sufficient representation of the target population discussed above.

### Information Prior To Visit

To investigate the level of familiarity with BONGOS CUBAN CAFE, respondents were first asked whether they heard about this business before coming today. Of all respondents 62.8% said they did hear about it, the remainder said "no" or "don't know". All those indicating some familiarity were then asked to indicate what exactly did they hear. Table 2 reports the results. The first column describes percentages based only on those who said 'yes' (i.e. heard about it before). In the second column, the percentages are based on all respondents.

The findings indicate that 40.2% of the 'yes' group heard something specific about the restaurant (e.g. good food, Cuban food, long lines, comments about the ambiance, etc.). Others just heard about in general from comments in the media (30.7%) or other people (14.5%). Specific mentions of Gloria and/or Emilio Estefan were made by 10.8% of this 'yes' group.

5

For the main purpose of this study, no one mentioned anything related to the plaintiff's brand. All the prior information was related to BONGOS CUBAN CAFE.

## Main Reason For Coming to BONGOS CUBAN CAFE

Next respondents were asked about the main reason for coming today to BONGOS CUBAN CAFE. The results are reported in Table 3. In order of importance, respondents came to BONGOS CUBAN CAFE because of a Cuban element/interest (26.0%), to eat/drink (23.7%), specifically to check it out (19.5%), or just happened to be in the area (12.0%). Less than 1% indicated "buying/shopping" as the main reason. One respondent answered "to buy bongos" and two indicated souvenirs. The analysis in table 3 of these two respondents revealed that they thought Gloria Estefan owned the place, and did not think BONGOS CUBAN CAFE was sponsored by another firm, or that it sold other products other than what is sold at the restaurant.

For the main purpose of this study, no one mentioned anything related to the plaintiff's brand. The reasons given were related to BONGOS CUBAN CAFE.

## Perceived Ownership of BONGOS CUBAN CAFE

Next respondents were asked: who do you think owns BONGOS CUBAN CAFE?  The results are reported in table 4. A large majority of respondents (78.9%) answered Gloria and/or Emilio Estefan.  The 'don't know' group were next (16.9%), followed by Disney (1.8%), Latin/Cuban person (1.6%), Estefan & Disney (0.5%). One respondent said "don't know, maybe bongos?".  An analysis of the answers given by this respondent indicates no mention of plaintiff's brand or products. BONGOS CUBAN CAFE was not associated with any other company, nor was it believed that it sold other products.

For the main purpose of this study, no one mentioned anything related to the plaintiff's brand. Almost 4 out of 5 respondents mentioned the Estefans as owners of BCC.

## Perceived Sponsorship or Association with Other Companies

Next respondents were asked: do you think that BONGOS CUBAN CAFE is sponsored by or is associated with any other company? The answers are reported in Table 5. Only 23.2% answered "yes", the rest were about equally divided between "no" (39.8%) and "don't know" (37.0%).  Those who said "yes" were asked to name the company. The names are reported in Table 5. The first column describes the percentages based only on those who said 'yes' (i.e. BONGOS CUBAN CAFE is associated with another company). In the second column, the percentages are based on all respondents. The results indicate that Disney was mentioned by 61.8% of the 'yes' group (which translates into 14.3% of the total sample). All other mentions were limited to very few respondents. The "don't know" group was 25.8% of the 'yes' sample. No one mentioned the plaintiff's brand.

6

**Other Products Sold by the Business**

Next respondents were asked: do you think this business sells any other products or services other than what is sold at the restaurant? The responses are reported in Table 6. Only 11.7% answered 'yes'. The large majority said "no" (62.2%) or "don't know" (26.0%).

Those respondents who said 'yes', believing the business sold other products or services, where asked to name these products and indicate where they were sold. The most common answer was music/entertainment (60.0% of the 'yes' base, which is equivalent to 7.0% of all respondents). The other categories were mentioned by a few respondents and are described in Table 6. Of all the respondents, six mentioned a t-shirt or a different type of clothing. Each of these cases was further analyzed to determine any potential for confusion and/or association with plaintiff's brand.  Table 7 reports the detailed findings for each of these six cases. In examining each case it is very clear that none of these respondents were referring to or thinking about the plaintiff's brand. Five out of the six mentioned earlier in the interview that Gloria Estefan owned the BONGOS CUBAN CAFE. In terms of distribution outlets the answers consisted of; around Disney, at your other restaurants, and at gift shops. None of these six respondents mentioned a department store or other retailing stores. No one mentioned the plaintiff's brand as the name of the other company.

**Conclusions**

Based on all the data available, we can clearly conclude that no evidence of ownership by plaintiff, association with plaintiff or plaintiff's products, or any relations between BONGOS CUBAN CAFE and plaintiff, was found in this study. None of the participants in this study has mentioned plaintiff or plaintiff's products. It is very clear that these participants are not thinking about the plaintiff or its products in the context of the BONGOS CUBAN CAFE experience. Given the strength of these findings, i.e. that NO ONE mentioned plaintiff or its products, confusion between the two brands at the BONGOS CUBAN CAFE location is extremely unlikely. For all practical purposes we can state that customers of BONGOS CUBAN CAFE, as represented in this study, are not thinking about a relationship, an association, sponsorship or similarity between plaintiff's brand and BONGOS CUBAN CAFE.

## TABLE 1

### SAMPLE COMPOSITION
Total Sample = 384

| Residence | | | Age | | |
|---|---|---|---|---|---|
| Visitor | 75.3% | | less than 14 years | | 4.9% |
| Orlando resident | 24.7% | | 14-19 years | | 12.2% |
| | 100% | | 20-29 years | | 16.4% |
| | | | 30-39 years | | 25.5% |
| Gender | | | 40-49 years | | 23.4% |
| Female | 48.4% | | 50 and over | | 17.4% |
| Male | 51.6% | | | | 100% |
| | 100% | | | | |

| Employed? | | | Interview Location | | |
|---|---|---|---|---|---|
| No | 24.0% | | Restaurant | | 85.9% |
| Yes | 76.0% | | Gift shop | | 14.1% |
| | 100% | | | | 100% |

| First time at (with a minimum of 50) BCC? visited…. | | | | Overall percent | |
|---|---|---|---|---|---|
| Yes | 82.6% | | Restaurant | | 95.8% |
| No | 17.4% | | Gift shop | | 49.2% |
| | 100% | | | | |

8

## TABLE 2

### INFORMATION PRIOR TO VISIT

*Q3. Have you heard about this business or this company, before coming in today?*

| | |
|---|---|
| No | 34.9% |
| Don't know | 2.3% |
| Yes | 62.8% |
| | 100% |

*Q3a. If yes: What exactly did you hear about it before coming in today?*

| | % based on yes | % based on all sample |
|---|---|---|
| Estefan | 10.8% | 6.8% |
| Comments in media | 30.7% | 19.3% |
| Word of mouth | 14.5% | 9.1% |
| About restaurant | 40.2% | 25.3% |
| Saw it in the past | 0.4% | 0.3% |
| No answer/don't remember | 3.3% | 2.1% |
| Didn't hear before | ----- | 37.2% |
| | 100% | 100% |

9

## TABLE 3

## MAIN REASON FOR COMING TO BCC

*Q4. What was the main reason you came into BONGOS CUBAN CAFE today?*

|                        | Count | %     |
|------------------------|-------|-------|
| Eat/drink              | 91    | 23.7% |
| Cuban element/interest | 100   | 26.0% |
| Came because of others | 28    | 7.3%  |
| Check it out           | 75    | 19.5% |
| Was in area            | 46    | 12.0% |
| Looking for activity   | 32    | 8.3%  |
| Buy bongos             | 1     | 0.3%  |
| Estefans               | 9     | 2.3%  |
| Buy souvenirs          | 2     | 0.5%  |
|                        | 384   | 100%  |

Analysis of the 2 respondents who came to buy souvenirs

> *Q5.    Who do you think owns BONGOS CUBAN CAFE?*
> Case #116, #157:    Gloria Estefan

> *Q6.    Do you think that BONGOS CUBAN CAFE is sponsored by or associated with any other company?*
> Case #116, #157:    No

> *Q7.    Do you think this business sells any other products or services other than what is sold here at the restaurant?*
> Case #116, #157:    No

Conclusion: No confusion with plaintiff's brand in these two cases

10

## TABLE 4

## PERCEIVED OWNERSHIP OF BCC

*Q5.  Who do you think owns BONGOS CUBAN CAFE?*

|  | Count | % |
|---|---|---|
| Don't know | 65 | 16.9% |
| Estefans | 303 | 78.9% |
| Disney | 7 | 1.8% |
| Estefan& Disney | 2 | 0.5% |
| Latin/Cuban person | 6 | 1.6% |
| Don't know, maybe bongos? | 1 | 0.3% |
|  | 384 | 100% |

Analysis of the respondent saying: "Don't know, maybe bongos?" (Case #110)

*Q5a.   Why do you say that:*   Because of the name

*Q6.    Do you think that BONGOS CUBAN CAFE is sponsored by or associated with any other company?*    No

*Q7.    Do you think this business sells any other products or services other than what is sold here at the restaurant?*   No

Conclusion: No confusion with plaintiff's brand in this case

11

**TABLE 5**

**PERCEIVED SPONSORSHIP OR ASSOCIATION
WITH OTHER COMPANIES**

*Q6.*   *Do you think that BONGOS CUBAN CAFE is sponsored by or associated with any other company?*

| | |
|---|---|
| No | 39.8% |
| Don't know | 37.0% |
| Yes | <u>23.2%</u> |
| | 100% |

*Q6a.*   *Of those who said yes: which company?*

| | % based 'yes' group | % based on total sample |
|---|---|---|
| Disney | 61.8% | 14.3% |
| Larios | 3.4% | 0.8% |
| Coca Cola | 2.2% | 0.5% |
| A restaurant group | 2.2% | 0.5% |
| Fisher family | 1.1% | 0.3% |
| General Mills | 1.1% | 0.3% |
| Someone in Miami | 1.1% | 0.3% |
| Estefans | 1.1% | 0.3% |
| Don't know | 25.8% | 6.0% |
| Didn't say 'yes' | ---- | <u>76.8%</u> |
| | 100% | 100% |

12

## TABLE 6

## OTHER PRODUCTS SOLD BY THE BUSINESS

*Q7.* *Do you think this business sells any other products or services other than what is sold here at the restaurant?*

| | |
|---|---|
| No | 62.2% |
| Don't know | 26.0% |
| Yes | 11.7% |
| | 100% |

*Q6a.* *Of those who said yes: what other products or services?*

| | Count | % based on 'yes' | % based on total sample |
|---|---|---|---|
| Music/entertainment | 27 | 60.0% | 7.0% |
| T-shirts & other clothing | 6 | 13.3% | 1.6% |
| Liquor | 1 | 2.2% | 0.3% |
| Cuban products/cigars | 2 | 4.4% | 0.5% |
| Food | 2 | 4.4% | 0.5% |
| Bongos | 1 | 2.2% | 0.3% |
| No answer | 6 | 13.3% | 1.6% |
| Didn't say 'yes' | 339 | ------ | 88.3% |
| | 384 | 100% | 100% |

13

**TABLE 7**

**ANALYSIS OF OTHER CLOTHING PRODUCTS**

| Case# (q7a) | Item (q7a) | Where sold? (q7b) | Who owns? (q5) | Company Association? (q6) | Company Name (q6a) |
|---|---|---|---|---|---|
| 176 | t-shirts | around Disney | Gloria Estefan | yes | don't remember |
| 178 | shirts & hats | don't know | Gloria | no | --------- |
| 179 | shirts & mugs | at your other restaurants | don't know | no | --------- |
| 205 | coats | gift shops | Gloria | no | ---------- |
| 216 | maybe clothes | gift shops | Gloria | no | ---------- |
| 307 | t-shirts & souvenirs | don't know | Gloria | yes | Disney |

Conclusion: No confusion with plaintiff's brand in any of these six cases

14

## 4. STATISTICAL DISTRIBUTION

The following pages (numbered 2 - 9) provide the complete statistical distribution of all analyzed questions as produced by the SPSS computer program.

LOCATION   Interview location

| Value Label | Value | Frequency | Percent | Valid Percent | Cum Percent |
|---|---|---|---|---|---|
| Restaurant | 1.00 | 330 | 85.9 | 85.9 | 85.9 |
| Gift shop | 2.00 | 54 | 14.1 | 14.1 | 100.0 |
| | Total | 384 | 100.0 | 100.0 | |

Mode        1.000

Valid cases    384    Missing cases    0

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Q1        Visitor or Orlando resident?

| Value Label | Value | Frequency | Percent | Valid Percent | Cum Percent |
|---|---|---|---|---|---|
| Visitor | 1.00 | 289 | 75.3 | 75.3 | 75.3 |
| Resident | 2.00 | 95 | 24.7 | 24.7 | 100.0 |
| | Total | 384 | 100.0 | 100.0 | |

Mode        1.000

Valid cases    384    Missing cases    0

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Q2        First time visiting this business?

| Value Label | Value | Frequency | Percent | Valid Percent | Cum Percent |
|---|---|---|---|---|---|
| Yes | 1.00 | 317 | 82.6 | 82.6 | 82.6 |
| No | 2.00 | 67 | 17.4 | 17.4 | 100.0 |
| | Total | 384 | 100.0 | 100.0 | |

Mode        1.000

Valid cases    384    Missing cases    0

Q3        Heard about business before?

| Value Label | Value | Frequency | Percent | Valid Percent | Cum Percent |
|---|---|---|---|---|---|
| No | 1.00 | 134 | 34.9 | 34.9 | 34.9 |
| D'ont know | 2.00 | 9 | 2.3 | 2.3 | 37.2 |
| Yes | 3.00 | 241 | 62.8 | 62.8 | 100.0 |
| | | ------- | ------- | ------- | |
| | Total | 384 | 100.0 | 100.0 | |

Mode        3.000

Valid cases    384    Missing cases    0

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Q3A        What did you hear before coming today?

| Value Label | Value | Frequency | Percent | Valid Percent | Cum Percent |
|---|---|---|---|---|---|
| Estefan | 1.00 | 26 | 6.8 | 10.8 | 10.8 |
| Media | 2.00 | 74 | 19.3 | 30.7 | 41.5 |
| WOM | 3.00 | 35 | 9.1 | 14.5 | 56.0 |
| Restaurant | 4.00 | 97 | 25.3 | 40.2 | 96.3 |
| Saw in past | 5.00 | 1 | .3 | .4 | 96.7 |
| No answer | 9.00 | 8 | 2.1 | 3.3 | 100.0 |
| | .00 | 143 | 37.2 | Missing | |
| | | ------- | ------- | ------- | |
| | Total | 384 | 100.0 | 100.0 | |

Mode        4.000

Valid cases    241    Missing cases    143

Q4        Main reason for coming to BCC

| Value Label | Value | Frequency | Percent | Valid Percent | Cum Percent |
|---|---|---|---|---|---|
| Eat/drink | 1.00 | 91 | 23.7 | 23.7 | 23.7 |
| Cuban element | 2.00 | 100 | 26.0 | 26.0 | 49.7 |
| Because of others | 3.00 | 28 | 7.3 | 7.3 | 57.0 |
| Check it out | 4.00 | 75 | 19.5 | 19.5 | 76.6 |
| Was in area | 5.00 | 46 | 12.0 | 12.0 | 88.5 |
| Activity | 6.00 | 32 | 8.3 | 8.3 | 96.9 |
| Buy  bongos | 7.00 | 1 | .3 | .3 | 97.1 |
| Estefans | 8.00 | 9 | 2.3 | 2.3 | 99.5 |
| Buy souvenirs | 9.00 | 2 | .5 | .5 | 100.0 |
| | | ------- | ------- | ------- | |
| | Total | 384 | 100.0 | 100.0 | |

Mode        2.000

Valid cases    384    Missing cases      0

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Q5        Who owns BCC?

| Value Label | Value | Frequency | Percent | Valid Percent | Cum Percent |
|---|---|---|---|---|---|
| Don't know | .00 | 65 | 16.9 | 16.9 | 16.9 |
| Estefans | 1.00 | 303 | 78.9 | 78.9 | 95.8 |
| Disney | 2.00 | 7 | 1.8 | 1.8 | 97.7 |
| Estefan & Disney | 3.00 | 2 | .5 | .5 | 98.2 |
| Don't know, bongos? | 4.00 | 1 | .3 | .3 | 98.4 |
| Latin/Cuban person | 7.00 | 6 | 1.6 | 1.6 | 100.0 |
| | | ------- | ------- | ------- | |
| | Total | 384 | 100.0 | 100.0 | |

Mode        1.000

Valid cases    384    Missing cases      0

02 Jan 96      DR. BARED: BONGOS CUBAN CAFE SURVEY      Page 8

Q5A      Why do you say that?

| Value Label | Value | Frequency | Percent | Valid Percent | Cum Percent |
|---|---|---|---|---|---|
| Heard from someone | 1.00 | 95 | 24.7 | 29.8 | 29.8 |
| From media | 2.00 | 142 | 37.0 | 44.5 | 74.3 |
| Disney property | 3.00 | 6 | 1.6 | 1.9 | 76.2 |
| Estefan related | 4.00 | 31 | 8.1 | 9.7 | 85.9 |
| Know from Miami | 5.00 | 10 | 2.6 | 3.1 | 89.0 |
| Just know it | 6.00 | 24 | 6.3 | 7.5 | 96.6 |
| The name | 7.00 | 1 | .3 | .3 | 96.9 |
| Cuban/Spanish cultur | 8.00 | 4 | 1.0 | 1.3 | 98.1 |
| No answer | 9.00 | 6 | 1.6 | 1.9 | 100.0 |
|  | .00 | 65 | 16.9 | Missing |  |
|  |  | ------- | ------- | ------- |  |
|  | Total | 384 | 100.0 | 100.0 |  |

Mode      2.000

Valid cases      319      Missing cases      65

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Q6      Sponsored/associated w. other company?

| Value Label | Value | Frequency | Percent | Valid Percent | Cum Percent |
|---|---|---|---|---|---|
| No | 1.00 | 153 | 39.8 | 39.8 | 39.8 |
| D'ont know | 2.00 | 142 | 37.0 | 37.0 | 76.8 |
| Yes | 3.00 | 89 | 23.2 | 23.2 | 100.0 |
|  |  | ------- | ------- | ------- |  |
|  | Total | 384 | 100.0 | 100.0 |  |

Mode      1.000

Valid cases      384      Missing cases      0

Q6A        Which company?

| Value Label | Value | Frequency | Percent | Valid Percent | Cum Percent |
|---|---|---|---|---|---|
| Disney | 1.00 | 55 | 14.3 | 61.8 | 61.8 |
| Larios | 2.00 | 3 | .8 | 3.4 | 65.2 |
| Coca Cola | 3.00 | 2 | .5 | 2.2 | 67.4 |
| Restaurant group | 4.00 | 2 | .5 | 2.2 | 69.7 |
| Fisher family | 5.00 | 1 | .3 | 1.1 | 70.8 |
| General Mills | 6.00 | 1 | .3 | 1.1 | 71.9 |
| Someone in Miami | 7.00 | 1 | .3 | 1.1 | 73.0 |
| Estefans | 8.00 | 1 | .3 | 1.1 | 74.2 |
| Don't know | 9.00 | 23 | 6.0 | 25.8 | 100.0 |
| | .00 | 295 | 76.8 | Missing | |
| | | ------- | ------- | ------- | |
| | Total | 384 | 100.0 | 100.0 | |

Mode        1.000

Valid cases    89    Missing cases    295

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Q6B        Why do you say that?

| Value Label | Value | Frequency | Percent | Valid Percent | Cum Percent |
|---|---|---|---|---|---|
| At Disney property | 1.00 | 55 | 14.3 | 61.8 | 61.8 |
| Own other things | 2.00 | 1 | .3 | 1.1 | 62.9 |
| Menu | 3.00 | 2 | .5 | 2.2 | 65.2 |
| Food place/restauran | 4.00 | 2 | .5 | 2.2 | 67.4 |
| Estefans | 5.00 | 1 | .3 | 1.1 | 68.5 |
| No answer | 9.00 | 28 | 7.3 | 31.5 | 100.0 |
| | .00 | 295 | 76.8 | Missing | |
| | | ------- | ------- | ------- | |
| | Total | 384 | 100.0 | 100.0 | |

Mode        1.000

Valid cases    89    Missing cases    295

Q7        Business sells other products?

| Value Label | Value | Frequency | Percent | Valid Percent | Cum Percent |
|---|---|---|---|---|---|
| No | 1.00 | 239 | 62.2 | 62.2 | 62.2 |
| Don't know | 2.00 | 100 | 26.0 | 26.0 | 88.3 |
| Yes | 3.00 | 45 | 11.7 | 11.7 | 100.0 |
| | Total | 384 | 100.0 | 100.0 | |

Mode        1.000

Valid cases    384    Missing cases    0

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Q7A       What other products?

| Value Label | Value | Frequency | Percent | Valid Percent | Cum Percent |
|---|---|---|---|---|---|
| Music/entertainment | 1.00 | 27 | 7.0 | 60.0 | 60.0 |
| T-shirts | 2.00 | 1 | .3 | 2.2 | 62.2 |
| Shirts & hats | 3.00 | 1 | .3 | 2.2 | 64.4 |
| Shirts and mugs | 4.00 | 2 | .5 | 4.4 | 68.9 |
| Liquor | 5.00 | 1 | .3 | 2.2 | 71.1 |
| Cuban products/cigar | 6.00 | 2 | .5 | 4.4 | 75.6 |
| Coats & clothes | 7.00 | 2 | .5 | 4.4 | 80.0 |
| Food | 8.00 | 2 | .5 | 4.4 | 84.4 |
| Bongos | 9.00 | 1 | .3 | 2.2 | 86.7 |
| No answer | 10.00 | 6 | 1.6 | 13.3 | 100.0 |
| | .00 | 339 | 88.3 | Missing | |
| | Total | 384 | 100.0 | 100.0 | |

Mode        1.000

Valid cases    45    Missing cases    339

Q7B       Where are these products sold?

| Value Label | Value | Frequency | Percent | Valid Percent | Cum Percent |
|---|---|---|---|---|---|
| Florida | 1.00 | 2 | .5 | 15.4 | 15.4 |
| At Disney | 2.00 | 2 | .5 | 15.4 | 30.8 |
| At other restaurants | 3.00 | 1 | .3 | 7.7 | 38.5 |
| To the public | 4.00 | 1 | .3 | 7.7 | 46.2 |
| Catering | 5.00 | 1 | .3 | 7.7 | 53.8 |
| Cuba | 6.00 | 1 | .3 | 7.7 | 61.5 |
| Gift shops | 7.00 | 2 | .5 | 15.4 | 76.9 |
| Miami | 8.00 | 2 | .5 | 15.4 | 92.3 |
| Record stores | 9.00 | 1 | .3 | 7.7 | 100.0 |
| | .00 | 371 | 96.6 | Missing | |
| | Total | 384 | 100.0 | 100.0 | |

Mode        1.000

* Multiple modes exist.  The smallest value is shown.

Valid cases      13    Missing cases     371

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Q8A       Also visited BCC gift shop?

| Value Label | Value | Frequency | Percent | Valid Percent | Cum Percent |
|---|---|---|---|---|---|
| Yes | 1.00 | 135 | 35.2 | 40.9 | 40.9 |
| No | 2.00 | 195 | 50.8 | 59.1 | 100.0 |
| | .00 | 54 | 14.1 | Missing | |
| | Total | 384 | 100.0 | 100.0 | |

Mode        2.000

Valid cases      330    Missing cases      54

Q8B        Also visited BCC restaurant?

| Value Label | Value | Frequency | Percent | Valid Percent | Cum Percent |
|---|---|---|---|---|---|
| Yes | 1.00 | 38 | 9.9 | 70.4 | 70.4 |
| No | 2.00 | 16 | 4.2 | 29.6 | 100.0 |
|  | .00 | 330 | 85.9 | Missing |  |
|  | Total | 384 | 100.0 | 100.0 |  |

Mode        1.000

Valid cases      54    Missing cases    330

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Q9         Age group

| Value Label | Value | Frequency | Percent | Valid Percent | Cum Percent |
|---|---|---|---|---|---|
| <14 | 1.00 | 19 | 4.9 | 4.9 | 4.9 |
| 14-19 | 2.00 | 47 | 12.2 | 12.2 | 17.2 |
| 20-29 | 3.00 | 63 | 16.4 | 16.4 | 33.6 |
| 30-39 | 4.00 | 98 | 25.5 | 25.5 | 59.1 |
| 40-49 | 5.00 | 90 | 23.4 | 23.4 | 82.6 |
| 50+ | 6.00 | 67 | 17.4 | 17.4 | 100.0 |
|  | Total | 384 | 100.0 | 100.0 |  |

Mode        4.000

Valid cases     384    Missing cases      0

02 Jan 98    DR. DAN SAREL:  BONGOS CUBAN CAFE SURVEY                    Page 10

Q10        Employed?

| Value Label | Value | Frequency | Percent | Valid Percent | Cum Percent |
|---|---|---|---|---|---|
| No | 1.00 | 92 | 24.0 | 24.0 | 24.0 |
| Yes | 2.00 | 292 | 76.0 | 76.0 | 100.0 |
| | Total | 384 | 100.0 | 100.0 | |

Mode        2.000

Valid cases    384    Missing cases    0


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SEX       Sex

| Value Label | Value | Frequency | Percent | Valid Percent | Cum Percent |
|---|---|---|---|---|---|
| Female | 1.00 | 186 | 48.4 | 48.4 | 48.4 |
| Male | 2.00 | 198 | 51.6 | 51.6 | 100.0 |
| | Total | 384 | 100.0 | 100.0 | |

Mode        2.000

Valid cases    384    Missing cases    0

**Number:**_____                                    **Location:** ☐Restaurant   ☐Gift shop

**Survey**

Hi, I am _____ of Barbara Nolan Market Research. We are conducting a short survey today about the business you are now visiting, and would like to ask you a few questions about it.

1. Are you a visitor or a resident of the Orlando area? ☐Visitor   ☐Resident

2. Is this the first time you are visiting this business? ☐Yes ☐No  ☐Don't Know *(don't read answers)*

3. Have you ever heard about this business or this company, before coming in today? *(don't read answers)*
☐No        ☐Don't know/not sure
☐Yes—>If yes:  What exactly did you hear about it before coming in today? Anything else?
_____
_____

4. What was the main reason you came into BONGOS CUBAN CAFE today? _____
_____

5. Could you tell me please, who do you think owns  BONGOS CUBAN CAFE?
_____

**If a specific name is mentioned ask:** Why do you say that? _____
_____
_____

6. Do you think that BONGOS CUBAN CAFE  is sponsored by or is associated with any other company?

☐No *(go to q7)*          ☐Don't know/not sure *(go to q7)*
☐Yes—>If yes which company? _____
_____

Why do you say that?_____
_____

7. Do you think this business sells any other products or services other than what is sold here at the restaurant and gift shop?
☐No  *(go to q8, next page)*          ☐Don't know/not sure *(go to q8, next page)*
☐Yes—>If yes, what other products or services? _____
_____
_____

Where are these products and services sold? _____
_____

# UNITED STATES DEPARTMENT OF COMMERCE
## Patent and Trademark Office

| SERIAL NO. | APPLICANT | | PAPER NO. |
|---|---|---|---|
| 75/290022 Estefan Enterprises, Inc. | | | |

**MARK**

BONGOS CUBAN CAFE AND DESIGN

| ADDRESS | | |
|---|---|---|
| LESLIE S SPITALNEY<br>HOLLAND & KNIGHT LLP<br>2100 PENNSYLVANIA AVE NE STE 400<br>WASHINGTON DC  20037 | **ACTION NO.** 02 | **ADDRESS:**<br>Assistant Commissioner<br>for Trademarks<br>2900 Crystal Drive<br>Arlington, VA 22202-3513 |
| | **MAILING DATE** 05/28/98 | If no fees are enclosed, the address should include the words "Box Responses - No Fee". |
| | **REF. NO.** 20366.30 | Please provide in all correspondence:<br>1. Filing Date, serial number, mark and Applicant's name.<br>2. Mailing date of this Office action.<br>3. Examining Attorney's name and Law Office number.<br>4. Your telephone number and ZIP code. |

FORM PTO-1525 (5-90)          U.S. DEPT. OF COMM. PAT. & TM OFFICE

TRADEMARK LAW OFFICE 107
Serial Number:  75/290022
Mark:  BONGOS CUBAN CAFE & DESIGN
       **Please Place on Upper Right Corner**
       **of Response to Office Action ONLY **

*For your convenience and to ensure proper handling of your response, a label has been enclosed. Please attach it to the upper right corner of your response. If the label is not enclosed, print or type the Trademark Law Office No., Serial No., and Mark in the upper right corner of your response.*

RE: Serial Number: 75/290022

This letter responds to the applicant's communication filed on April 16, 1998.

## APPLICATION SUSPENDED

This application is hereby **SUSPENDED** pending the disposition of Civil Action No. 97-2993-CIV-KING.  Upon termination of the proceeding, the applicant, if a party thereto, should advise the examining attorney of the outcome.

This application is also **SUSPENDED** pending the disposition of Application Serial No. 75-128703.  Since the applicant's effective filing date is subsequent to the effective filing date of the above-identified application, the latter, when it registers, may be cited against this application.  See 37 C.F.R. §2.83.

## REFUSAL UNDER TRADEMARK ACT SECTIN 2(d) CONTINUED

The refusal to register under Trademark Act Section 2(d) is continued as to cited registrations 1974123, 1895168, 1898168, 1500609, and 1331004

HOLLAND & KNIGHT
DOCKETED
Date: 6-3-98
By:

75/290022                                    -2-

**STATUS LINE:** (703) 305-8747

Cheryl A. Butler
Examining Attorney
Law Office 107
(703) 308-9107 X165

## REFERENCE REQUEST—FEDERAL RECORDS CENTERS

**NOTE: Use a separate form for each request.**

### SECTION I—TO BE COMPLETED BY REQUESTING AGENCY

| ACCESSION NO. | AGENCY BOX NUMBER | RECORDS CENTER LOCATION NUMBER |
|---|---|---|
| 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 | 14 OF / | EO042142SAN |

DESCRIPTION OF RECORD(S) OR INFORMATION REQUESTED

☐ BOX     *Please insert in file Thank you.*

☐ FOLDER (include file number and title)

**REMARKS**   90-10024-CR

DE# 318, 288, *303, 315, 299, 284, 308, -310
312, 311, 309, 307, 304, 306, 305, 300, 301 302 313
* Sealed DOC Notice only          314, 316, 317

NATURE OF SERVICE

☐ FURNISH COPY OF RECORD(S) ONLY   ☐ PERMANENT WITHDRAWAL   ☐ TEMPORARY LOAN OF RECORD(S)   ☐ REVIEW   ☒ OTHER (Specify) please insert in file

### SECTION II—FOR USE BY RECORDS CENTER

REMARKS

☐ RECORDS NOT IN CENTER CUSTODY   ☐ RECORDS DESTROYED

☐ WRONG ACCESSION NUMBER—PLEASE RECHECK

☐ WRONG BOX NUMBER—PLEASE RECHECK

☐ WRONG CENTER LOCATION—PLEASE RECHECK

☐ ADDITIONAL INFORMATION REQUIRED TO IDENTIFY RECORDS REQUESTED

☐ MISSING (Neither record(s), information nor charge card found in container(s) specified)

☐ RECORDS PREVIOUSLY CHARGED OUT TO (Name, agency and date):

| | DATE | SERVICE | TIME REQUIRED | SEARCHER'S INITIALS |
|---|---|---|---|---|
| | | | | |

### SECTION III—TO BE COMPLETED BY REQUESTING AGENCY

| NAME OF REQUESTER | TELEPHONE NO. ☐ FTS | DATE | RECEIPT OF RECORDS |
|---|---|---|---|
| Patricia Snead | 305-536-6698 | 11/3/98 | |

NAME AND ADDRESS OF AGENCY (include street address, building, room no. and ZIP Code)

United States District Court
301 North Miami Avenue
Records Department – Room 247
Miami, Florida    33128

Requester please sign, date and return this form, for file item(s) listed above, ONLY if the block to right has been checked by the Records Center.   ☐

| SIGNATURE | DATE |
|---|---|
| | |

NSN 7540-00-682-6423
5011-108          PREVIOUS EDITION USABLE          OPTIONAL FORM 11 (Rev. 7-87)
NATIONAL ARCHIVES AND RECORDS ADMINISTRATION

## REFERENCE REQUEST—FEDERAL RECORDS CENTERS

**NOTE: Use a separate form for each request.**

### SECTION I—TO BE COMPLETED BY REQUESTING AGENCY

| ACCESSION NO. | AGENCY BOX NUMBER | RECORDS CENTER LOCATION NUMBER |
|---|---|---|
| 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 | 14 OF / | E0042142SAN |

**DESCRIPTION OF RECORD(S) OR INFORMATION REQUESTED**

☐ BOX     *Please insert in file Thank you.*

☐ FOLDER (include file number and title)

**REMARKS**     90-10024-CR

DE# 318, 288, *303, 315, 299, 289, 308, 310
312, 311, 309, 307, 304, 306, 305, 300, 301, 302, 3
314, 316, 3

* Sealed doc notice only

**NATURE OF SERVICE**

☐ FURNISH COPY OF RECORD(S) ONLY
☐ PERMANENT WITHDRAWAL
☐ TEMPORARY LOAN OF RECORD(S)
☐ REVIEW
☒ OTHER (Specify) please insert in file

### SECTION II—FOR USE BY RECORDS CENTER

☐ RECORDS NOT IN CENTER CUSTODY     ☐ RECORDS DESTROYED

☐ WRONG ACCESSION NUMBER—PLEASE RECHECK

☐ WRONG BOX NUMBER—PLEASE RECHECK

☐ WRONG CENTER LOCATION—PLEASE RECHECK

☐ ADDITIONAL INFORMATION REQUIRED TO IDENTIFY RECORDS REQUESTED

☐ MISSING (Neither record(s), information nor charge card found in container(s) specified)

☐ RECORDS PREVIOUSLY CHARGED OUT TO (Name, agency and date):

**REMARKS**

| | DATE | SERVICE | TIME REQUIRED | SEARCHER'S INITIALS |
|---|---|---|---|---|
| | | | | |

### SECTION III—TO BE COMPLETED BY REQUESTING AGENCY

| NAME OF REQUESTER | TELEPHONE NO. ☐ FTS | DATE |
|---|---|---|
| Patricia Snead | 305-536-6698 | 11/3/98 |

**NAME AND ADDRESS OF AGENCY** (Include street address, building, room no. and ZIP Code)

United States District Court
301 North Miami Avenue
Records Department — Room 247
Miami, Florida   33128

**RECEIPT OF RECORDS**

Requester please sign, date and return this form, for file item(s) listed above, ONLY if the block to right has been checked by the Records Center.     ☐

| SIGNATURE | DATE |
|---|---|

NSN 7540-00-682-6423
5011-108

PREVIOUS EDITION USABLE

OPTIONAL FORM 11 (Rev. 7-8
NATIONAL ARCHIVES AN
RECORDS ADMINISTRATI